# United States Court of Appeals
## For the First Circuit

No. 13-1202

UNITED STATES OF AMERICA,

Appellee,

v.

ALEJANDRO FIGUEROA-LUGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Johnny Rivera-González for appellant.
Daniel Steven Goodman, Criminal Division, Appellate Section, U.S. Department of Justice, with whom Rosá Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, Jenifer Y. Hernandez-Vega, Assistant United States Attorney, Mythili Raman, Acting Assistant Attorney General, and Denis J. McInerney, Deputy Assistant Attorney General, were on brief, for appellee.

July 17, 2015

**LIPEZ, Circuit Judge**. Appellant Alejandro Figueroa-Lugo ("Figueroa") appeals from his conviction for knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). We affirm.

## I.

On March 17, 2011, Figueroa was charged with one count of "knowingly possess[ing] one or more matters which contained visual depictions of one or more minors engaging in sexually explicit conduct," in violation of 18 U.S.C. § 2252(a)(4)(B). Pursuant to 18 U.S.C. § 2253, the indictment also sought criminal forfeiture of the Compaq Presario computer that had been seized from Figueroa's bedroom. On July 10, 2012, following a six-day trial, the jury found Figueroa guilty as charged in the indictment. At a subsequent sentencing hearing, the district court sentenced him to seventy-two months of imprisonment, to be followed by eight years of supervised release.

Figueroa appeals the court's denial of his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. United States v. Figueroa-Lugo, 915 F. Supp. 2d 237 (D.P.R. 2013). He contends that the evidence presented at trial was insufficient to convict him of a violation of § 2252(a)(4)(B) because the government failed to prove (1) that the people in the images and videos were actual children, and (2) that Figueroa's

-2-

possession of any child pornography was knowing.[1] Additionally, Figueroa appeals three of the district court's jury instruction rulings: (1) the decision to give a willful blindness instruction, (2) the decision not to instruct the jury as to the affirmative defense provided in 18 U.S.C. § 2252(c) that the defendant promptly and in good faith took steps to destroy the child pornography that he possessed, and (3) the refusal to give his proposed "inconsistent mental state" jury instruction.

## II.

In analyzing a claim that the district court erred in denying a post-trial motion for judgment of acquittal, we "must affirm the conviction if after de novo review of the evidence taken in the light most favorable to the government, we conclude that a rational factfinder could find that the government proved the essential elements of its case beyond a reasonable doubt." United

---

[1] Section 2252(a)(4)(B) provides in pertinent part:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been . . . transported using any means or facility of interstate or foreign commerce . . . by any means including by computer, if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) . . .

States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008); see also United States v. Chiaradio, 684 F.3d 265, 281 (1st Cir. 2012) (applying the standard in a child pornography case). Such a standard of review is "formidable," and a defendant who challenges a conviction on the basis of insufficient evidence confronts "an uphill battle on appeal." United States v. Rodríguez, 457 F.3d 109, 118 (1st Cir. 2006). "[R]aising a plausible theory of innocence does the defendant no good, because the issue is not whether a jury rationally could have acquitted but whether it rationally could have found guilt beyond a reasonable doubt." United States v. Seng Tan, 674 F.3d 103, 107 (1st Cir. 2012).

## A. The Government's Case[2]

### 1. Locating the Defendant

On January 29, 2010, at the request of law enforcement in Puerto Rico, Lieutenant Glenn Lang ("Lang"), supervisor of the Maine State Police's computer crimes unit, conducted a peer-to-peer networking investigation to determine whether child pornography was being transmitted to Puerto Rico over the internet. Lang, an expert in computer forensics and peer-to-peer networking, checked LimeWire, a peer-to-peer program that allows users who install it on their computers to set up folders and share files with other

---

[2] All of the facts recounted are taken directly from the trial testimony of the identified officers. We describe the government's case generally here. Additional evidence from the government's case is discussed in relation to specific arguments Figueroa presents about the insufficiency of the evidence.

LimeWire users. In order to find consumers of child pornography, Lang accessed a number of databases containing lists of files that police officers had identified as child pornography. Using "global unique identifiers," Lang was able to obtain a list of the top offenders in San Juan, Puerto Rico by identifying the Internet Protocol ("IP") addresses of the LimeWire users who had accessed the greatest number of files tagged as child pornography in the police databases. At the top of that list was IP address 209.91.206.209, which police databases indicated was sharing 363 files of child pornography through LimeWire by the time Lang conducted his investigation in January 2010. From November 28, 2009 through early 2010, the only user of IP address 209.91.206.209 was the household of Fernando Figueroa, the father of appellant Alejandro Figueroa. Caribe Net, an internet service provider in Puerto Rico, assigned that IP address to Fernando Figueroa's account. It was Caribe Net's practice to assign only one IP address to a single residential address, even if several individuals used multiple computers within the residence.

In the names for the files associated with IP address 209.91.206.209, Lang identified several terms commonly used in child pornography files, including "pthc" (for "preteen hard core"), "pedophilia," "pedo," "r@ygold," "hussyfan," and "child porn." For example, Lang testified that on January 27, 2010, a video file with the title "porn pthc 9yo Vicki stripping and

sucking (kiddie pedo illegal underage preteen).mpg" was shared with IP address 209.91.206.209. Lang indicated that the file was "a fairly large video file . . . in what's called the Vicki series" and shows "a nine-year-old girl stripping down" who "gets down on her knees and performs oral sex on an adult male."

Lang mailed the results of his child pornography database search to the Homeland Security Investigations ("HSI") directorate of Immigration and Customs Enforcement ("ICE") in Puerto Rico. Agent Harold Simmons Julsrud, III, a criminal investigator and forensics agent in the cyber crimes group of HSI, received the information, and, through Caribe Net, learned the physical address associated with IP address 209.91.206.209. He then obtained a search warrant for the residence.

**2. The Fruits of the Search**

At 6:00 a.m. on May 12, 2010, Agent Julsrud and other HSI cyber crimes unit agents executed the search warrant at the Figueroa residence. Appellant and his parents, Fernando Figueroa and Bárbara Lugo, were present. The agents seized nine computers and eight loose hard drives, as well as thumb drives, DVDs, CDs, and videotapes. They found one of the computers, a Compaq Presario desktop computer, on a desk in the appellant's bedroom, turned on with several sessions of Mozilla Firefox internet browser open.

Special Agent Luis Manuel Colón of ICE, an expert[3] in computer forensics, performed a forensic examination of all the computers and media devices seized from the home. He found child pornography on the Compaq Presario desktop computer seized from the appellant's bedroom, but not on any of the other devices taken from the residence. On that computer, Agent Colón discovered eighteen still images and seven videos "that contained minors in lasciv[i]ous exhibition of the genitalia." LimeWire software had been installed on the computer on September 11, 2009 and updated on March 17, 2010. The only user name on the computer was "the Alejandro account."

All of the still images of child pornography on that computer were stored in the "Alejandro\ My Documents\ LimeWire\ Saved" folder. The images had not been deleted, and all were accessible to the computer user. The images were identified by file names such as "9yo Jenny nude with legs spread wide apart showing pussy -- underage lolita r% 2540Ygold Pthc ptsc ddogprn pedo young child sex preteen hussyfan kiddie kiddy porn" and "6yr old yo underage child daughter childsex childfugga childlover ptsc pthc lsm lsn pedo rape torture cum ass pussy hussyfan mafiasex r@ygold dick Sandra teen model bd(1)."

---

[3] The government qualified Colón as "an expert in the field of computer forensics, specifically in the service of computer evidence," without objection.

Similarly, all seven child pornography videos had not been deleted and were accessible to the computer user. Those videos were saved on Figueroa's computer in LimeWire folders, including "C drive\ Documents and Settings\ Alejandro\ My Documents\ LimeWire\ Incomplete" and "C drive\ Documents and Settings\ Alejandro\ My Documents\ My Chat Logs\ LimeWire\ Incomplete\ New Folder." The videos saved in a folder with the word "incomplete" in its title were accessible to the user through both LimeWire and Windows.

## B. Figueroa's Defense[4]

### 1. Anner Bonilla Rivera

Bonilla, a software engineer for Hewlett Packard, was the first to testify for Figueroa. He sought to establish that various anti-virus programs found on Figueroa's computer could have been responsible for opening the child pornography files, rather than Figueroa himself. Specifically, Bonilla testified that the anti[-]virus software Avira accesses every file on the computer to determine whether it is infected with a virus. He stated that "[t]here's no way to know if the 'last access date' was changed by an anti-virus or by a user or by any other Windows application . . . that opened it." He similarly testified that

---

[4] Figueroa testified and he called three witnesses: Anner Bonilla Rivera, a computer networking expert, and two character witnesses, Wanda Morrero and William Omar Rodriguez Ramos. We describe Figueroa's defense generally here. Some of the particulars of Figueroa's defense are discussed in more depth in relation to Figueroa's specific challenges to the sufficiency of the evidence.

"[t]here's no way to know" if PC Health virus, also found on Figueroa's computer, modified any of the files containing child pornography. Bonilla testified that a user does not have to open files on LimeWire to be able to download them.

### 2. Figueroa

Figueroa testified that he downloaded child pornography from LimeWire inadvertently, stating that, "when I would observe it and would see child pornography, I would erase it." Figueroa estimated that he might have downloaded and viewed more than 100 videos of child pornography and more than 100 still images of child pornography, but he could not provide an exact number. He insisted that if he thought an image or video was child pornography, he "would erase it." He also maintained that "not all of [the images and videos shown at trial] look like child pornography." Although he admitted that he had searched on his computer for the terms "young" and "sex" together, he believed that Google would "filter out" any images of girls younger than 18.

Figueroa further testified that he used LimeWire to create his own YouTube videos, typing in search terms to retrieve movies, photographs, and music. When he conducted those LimeWire searches, he would sometimes see child pornography, but he "would erase it because [he] wasn't interested in it." Figueroa recounted an instance in which he looked for a soccer video by searching for the terms "Best Goal Ever," but instead received a video of "[a]

girl taking off her clothes and dancing nude." He deleted the video.

Figueroa recounted a time when he was playing an online video game and met a person online who was "trying to pass for being a girl." The girl asked Figueroa if he "wanted her to send [him] pictures of her naked," to which he allegedly responded, "How old are you?" When the girl answered, "I'm over 18," Figueroa said, "Okay, that's fine." The girl then sent him photographs of "her breasts, her vagina and her buttocks." Subsequently, the girl had a conversation with another player in the online video game, which Figueroa saw, and told the player that she was only sixteen-years-old.[5] Figueroa acknowledged that he kept the photographs the girl had sent him in his email account until federal agents seized his computer on May 12, 2010, at which time Figueroa used a university computer to delete the pictures from his email account.

## C. Figueroa's Challenges to the Sufficiency of the Evidence

To support his claim that the evidence was insufficient to establish that he knowingly possessed the child pornography found on his computer, Figueroa makes the following arguments:[6] (1)

---

[5] At the time, Figueroa, the girl, and the third person who the girl had informed that she was sixteen, were all playing a video game together in which all players are able to view each other's chat conversations via a "shot box."

[6] In its brief on appeal, the government divides Figueroa's undifferentiated challenge to the sufficiency of the evidence in his opening brief into six categories. We find that division useful and apply it here.

none of the witnesses at trial could scientifically establish that he purposely intended to download any child-related pornography, and any child pornography he did download was inadvertent, (2) the seven videos and eighteen images were only partially downloaded and were therefore inaccessible to him, (3) whenever he inadvertently downloaded child pornography he deleted it, (4) anti-virus software on his computer could have accessed and modified any child pornography on his computer, (5) he afforded access to his computer to a number of other people, any of whom could have downloaded the child pornography, and finally (6) the government failed to establish that the images depicted actual children. We address each of these arguments in turn.

## 1. Intent to Download Child Pornography

Figueroa contends that if his searches on LimeWire yielded child pornography results that were in turn downloaded onto his computer, it was inadvertent. The record suggests otherwise.

Agent Colón, the computer forensics expert who examined Figueroa's computer, testified that the seven videos and eighteen images of child pornography were all contained in LimeWire folders on Figueroa's computer. Files obtained through LimeWire cannot automatically download onto a computer. A user would have to actively search for files and then select them by clicking to

download those files. Lieutenant Lang,[7] an expert in computer forensics and peer-to-peer networking, explained that a LimeWire user employs the program's search tab to type in words such as "preteen hard core, or pthc," which the user hopes will appear in a file name. Consistent with Agent Colón's testimony, Lang testified that when LimeWire search results show a file that contains the desired search term, the user must click on the file before it will download.

Based on this testimony, a rational jury could have found that, in order to retrieve files with names such as "porn pthc 9yo Vicki stripping and sucking (kiddie pedo illegal underage preteen)" or "naked penis preteen vagina little girls ass 6 year old panties gay hussyfan 7yo lolitaguy 8yr pussy pedo kiddie porn," Figueroa used search terms associated with child pornography. He then intentionally downloaded the files that the LimeWire network had shared with him in response to those search requests before any child pornography would be downloaded to the LimeWire folders on his computer. See United States v. Breton, 740 F.3d 1, 17 (1st Cir. 2014) ("[A] defendant's . . . use of search terms associated with child pornography can support a finding that the defendant knew the images he retrieved contained child pornography.").

---

[7] The government qualified Lang "as an expert in peer-to-peer networking and computer forensics," without objection.

-12-

## 2. Inaccessible Partially Downloaded Files

Figueroa asserts that files on his computer that were not fully downloaded were inaccessible. Such a contention is rebutted by Lieutenant Lang and Agent Colón's trial testimony. Lang testified that under LimeWire's default settings a file "will initially go to the incomplete folder" and remain there until the "file is complete[ly]" downloaded, at which point "it will move over to [a] saved [folder]." Videos and still images can be viewed by a computer user when they are located in a LimeWire "incomplete folder." In fact, Lang noted, "an illicit file" could remain in an "incomplete folder" for a long time, possibly even "for years," and be viewed there.

Agent Colón testified that a file that has not been fully downloaded on LimeWire has a "T" preceding its file name. Once the file is completely downloaded, the "T" notation is removed and the file is automatically transferred to the saved folder. If someone attempts to view a partially downloaded file through LimeWire, the word "preview" is added to the "T" notation in the file name. Noting this testimony, Figueroa argues that, because none of the video files had "preview" in their titles, he could not have accessed them.

Such an assertion is plainly contradicted by the trial record. Colón testified that the files could have been accessed via Windows Explorer, and no "preview" notation would be added to the

file name.[8] Furthermore, Colón testified that a particular child pornography image had been accessed via Windows Explorer. Accordingly, a jury could have found that at all times the partially downloaded files were accessible to Figueroa.

### 3. Deletion of Child Pornography

Figueroa insists that "whenever any unwanted child pornography was downloaded" to his computer, he "immediately deleted [the] same." The trial testimony rebuts this claim.

At the time of the trial, seven videos and eighteen still images of child pornography were on Figueroa's computer. Agent Colón explained that one of the child pornography files in question, "9-year-old Jenny nude with legs spread wide apart," was created on March 27, 2010, had been saved in a computer folder with Figueroa's name and profile, and was still available to the computer's user when the computer was seized on May 12, 2010. In addition, on April 14, 2010, the WindowsXP operating system on Figueroa's computer created a "Thumbs.db file" just minutes after another child pornography file was downloaded onto the computer. Agent Colón testified that the Thumbs.db file was located in the same LimeWire folder "where the child pornography videos were found," which showed that "the user accessed the file using . . . Windows Explorer." The child pornography video had not been

---

[8] Bonilla also testified that if the files were viewed using Windows Explorer, no "preview" notation would be added to the file.

deleted; rather, the Windows operating system created "a little icon" that would allow the images to be accessed more quickly in the future. The images of child pornography remained on Figueroa's computer when it was seized. Moreover, Bonilla, Figueroa's own expert, acknowledged in cross examination that eighteen still images and seven videos containing child pornography were found on Figueroa's computer and that none of the files had been deleted, scrubbed or sanitized by anti-virus software.

Furthermore, Figueroa admitted at trial to having downloaded child pornography and failing to delete it from his computer. When asked by the government's attorney, "you admit that you've had child pornography downloaded and you have seen it, correct?" Figueroa responded, "When I know it has been downloaded, yes." The prosecutor then asked, "the truth is that this image [of child pornography], you did not delete, correct?" to which Figueroa responded, "Yes." Figueroa's deletion claim is groundless.

### 4. Anti-Virus Software

Figueroa asserts that "other software such [as] an anti-virus" program could have been "responsible for accessing or modifying" the files on his computer that contained child pornography. However, he does not contend that anti-virus software was responsible for downloading child pornography onto his computer in the first place. Agent Colón did find an Avira anti-virus software program on Figueroa's computer, but testified that an

-15-

anti-virus program would not change the date on which a file was created, nor would it be capable of downloading child pornography. Figueroa's own computer networking expert, Bonilla, admitted that anti-virus software cannot download child pornography onto a computer.

### 5. Other Users' Access to Figueroa's Computer

Figueroa argues that the child pornography found on his computer could have been downloaded by a number of people to whom he "afforded access" or even by "an unknown party" capable of breaking into his home router signal. Figueroa testified, however, that he was the primary user of the computer located in his bedroom and that he downloaded LimeWire. Figueroa acknowledged that he likely downloaded and viewed more than 100 videos and 100 images of child pornography after he installed LimeWire on his computer:

> MS. HERNANDEZ: So how many other child pornography images or videos did you download into your computer that you had to erase?
> FIGUEROA: Well, when I would check them and see that I had downloaded child pornography, I would erase them. It was a good amount.
> MS. HERNANDEZ: So how many videos would you say that you downloaded?
> FIGUEROA: I don't know a specific number, but it was a good amount.
> . . .
> MS. HERNANDEZ: And you admit, then, that you have downloaded child pornography through LimeWire?
> FIGUEROA: Admitting in the sense that I didn't know what I was downloading, and then I would observe it and would see child pornography, I would erase it.
> MS. HERNANDEZ: So how many other videos of child pornography have you seen, other than

-16-

> the ones that we found in your computer now,
> that you deleted? . . . More than one hundred?
> FIGUEROA: Yes, but that doesn't mean that I
> would see the entire video.

In addition, all of the child pornography videos found on Figueroa's computer were saved to the computer's C drive in a file titled "Documents and Settings\ Alejandro\My Documents\ LimeWire\ Incomplete" and all of the still images were saved to the folder "Alejandro\ My Documents\ LimeWire\ Saved" folder. From this evidence a rational jury could conclude that it was Figueroa, not one of his friends or an unknown user, who downloaded the files. See United States v. Koch, 625 F.3d 470, 478 (8th Cir. 2010) (stating that a conviction was supported by the fact that "user names on both the computer and flash drive [on which child pornography were found] were variations on [the defendant's] first name"). Moreover, Agent Colón testified that Figueroa used his personal email address to chat on the computer within minutes of the creation of child pornography files.

Furthermore, multiple child pornography files were created on the computer at times between 4:00 a.m. and 4:30 a.m, suggesting that Figueroa himself downloaded the files. See United States v. Salva-Morales, 660 F.3d 72, 75 (1st Cir. 2011) (per curiam) (asserting that because downloaded child pornography files were accessed between 2:00 a.m. and 3:00 a.m., "it is a reasonable inference that [the defendant] was the one accessing the files at these times"). Figueroa admitted that the room in which the Compaq

-17-

Presario desktop computer was found was his bedroom. There was no evidence that anyone else slept in the room or was present during the early morning hours.

Figueroa argues that the time at which the files were downloaded is irrelevant because when files are selected as part of a bulk download, LimeWire cannot begin all the downloads simultaneously. He contends that files that were downloaded at 4:00 a.m. "could have been selected early during the day" but downloaded at a later time. Figueroa presented no evidence at trial to suggest that LimeWire files selected for download do not begin to download immediately. In fact, Agent Colón testified that a Limewire file begins to download the moment the user selects the file for download. The jury was permitted to accept as true Agent Colón's testimony.

**6. Images of Actual Children**

Finally, Figueroa claims that the government failed to prove beyond a reasonable doubt that the still images and videos contained depictions of actual children engaged in sexually explicit activity. In a child pornography case, "[t]he prosecution must prove beyond a reasonable doubt that the image is of an actual child in order to establish guilt." United States v. Rodriguez-Pacheco, 475 F.3d 434, 439 (1st Cir. 2007). However, "[t]here is no per se rule that the prosecution is required to produce expert testimony in every case to establish that the depicted child is

-18-

real, for either guilt or sentencing purposes." United States v. Hoey, 508 F.3d 687, 691 (1st Cir. 2007). Rather, "juries are capable of distinguishing between real and virtual images, without expert assistance." Rodriguez-Pacheco, 475 F.3d at 441.

In the instant case, the prosecutors showed the jury eighteen still images and seven videos of alleged child pornography found on Figueroa's computer. Despite the fact that it was not required to do so, the government also presented expert testimony that the images and videos contained actual minors. Agent Colón, who had performed computer forensics work in dozens of child pornography cases, testified that he "found 18 images and 7 videos that contained minors in lasciv[i]ous exhibition of the genitalia" on Figueroa's computer. Lieutenant Lang, who had investigated hundreds of child pornography cases, examined the files associated with Figueroa's IP address and stated, "Yes, that's definitely child pornography." He testified that he recognized one of the videos associated with Figueroa's IP address because he had previously seen the video in another child pornography case, which had an identified victim and was "a bad piece of child pornography." The images and videos introduced into evidence, in conjunction with the testimony of two experts, were sufficient for a rational jury to conclude beyond a reasonable doubt that the files on Figueroa's computer depicted images of actual children engaged in sexually explicit conduct.

-19-

For all of the reasons stated above, Figueroa's sufficiency of the evidence argument fails.[9]

## III.

When the defendant preserves an objection to a jury instruction, we generally review the form and wording of the

---

[9] In his reply brief, Figueroa raises a number of additional arguments, all of which lack merit. He argues that (1) the evidence was insufficient to establish that he actually downloaded 363 files of child pornography, (2) the evidence was insufficient to establish that only his family had access to IP address 209.91.206.209, (3) he could not find in the record Agent Colón's statement that within minutes of one of the child pornography videos being downloaded onto Figueroa's computer he engaged in an online e-mail chat, and (4) he never admitted that he personally downloaded "a good amount" of child pornography.

As noted, the government provided sufficient evidence that Figueroa downloaded eighteen images and seven videos. It did not seek to prove that he downloaded 363 files of child pornography. With regards to claim (2), Karen Larson, the Senior Vice President of Caribe Net, testified that each Caribe Net customer is assigned his or her own unique IP address and that for the period of time in question IP address 209.91.206.209 was always assigned to the Figueroa household. Because IP addresses are assigned to individuals based on their physical residence, two users who were not in the same household could not access the same IP address. With regards to allegation (3), Agent Colón testified that "seven minutes after the video file [containing child pornography] was created, the computer created an HTML entry" containing "a chat between Luli and el Bebo 13. El bebo 13 is one of the email addresses that belongs to the defendant, Alejandro." The video file was entitled "Compiled 4 girls-all small and loving it." Transcript, ECF No. 96. Hence, Figueroa is correct that the government misrepresents Colón's testimony when it states that "Figueroa engaged in an online email chat, telling another computer user that he was 'loving' the child pornography video." The government wrongly conflates Colón's testimony and the file name. Nonetheless, the essential piece of Colón's testimony -- namely, that Figueroa engaged in an online chat minutes after one of the child pornography videos was downloaded -- is clearly in the record. Finally, with regards to claim (4), Figueroa admitted that he downloaded "a good amount" of videos containing child pornography. Transcript, ECF No. 97 at 123-25.

instruction for an abuse of discretion, while reviewing de novo any claim of legal error embodied in the instruction. United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009); see also United States v. Díaz-Arias, 717 F.3d 1, 23 (1st Cir. 2013) ("Properly preserved challenges to jury instructions are reviewed de novo, taking into account the charge as a whole and the body of evidence presented at trial." (internal quotation marks omitted)). "A district court's decision to give a particular instruction, over a party's objection, constitutes reversible error only if the instruction was (1) 'misleading, unduly complicating, or incorrect as a matter of law'; and (2) 'adversely affected the objecting party's substantial rights.'" United States v. Stark, 499 F.3d 72, 79 (1st Cir. 2007) (quoting Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999)). Even an incorrect instruction will not warrant reversal if it was harmless. United States v. McDonough, 727 F.3d 143, 157 (1st Cir. 2013).

A district court's refusal to give a requested instruction is reviewed de novo. United States v. Baird, 712 F.3d 623, 627 (1st Cir. 2013). To succeed with a claim of error, a defendant must have presented sufficient evidence that he was entitled to the instruction. Id. The initial threshold determination we must make is whether the evidence, viewed in the light most favorable to the defense, "can plausibly support the theory of the defense." United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998) (emphasis omitted). Accordingly, if the evidence in

the record does not support a requested affirmative defense, a district court is not required to include it. See, e.g., United States v. Guevara, 706 F.3d 38, 46-47 (1st Cir. 2013) (holding that the district court did not err in declining to give the defendant's proposed entrapment instruction because the record lacked evidence to support that affirmative defense).

Assuming that the defendant satisfies this initial burden, we "will reverse a district court's decision to deny the instruction only if the instruction was (1) substantively correct as a matter of law, (2) not substantially covered by the charge as rendered, and (3) integral to an important point in the case so that the omission of the instruction seriously impaired the defendant's ability to present his defense." Baird, 712 F.3d at 628. We decide each step in that three-part analysis de novo. Id.

## A. Willful Blindness Instruction

A "willful blindness instruction is appropriate if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge." United States v. Azubike, 564 F.3d 59, 66 (1st Cir. 2009).

Figueroa argues that the district court's willful blindness instruction unduly influenced and confused the jury by allowing them to convict him of a violation of § 2252(a)(4)(B) with

a mens rea of less than "knowingly." The court instructed the jury:

> In deciding whether a defendant acted knowingly, you may infer that the defendant had knowledge of a fact if you find that he deliberately closed his eyes to a fact that otherwise would have been obvious to him.

The court's decision to give a willful blindness instruction, and the text of that instruction, satisfy each of the three elements of the test articulated in United States v. Azubike. First, Figueroa's primary defense in this case was that he did not knowingly download child pornography. Throughout the trial, Figueroa denied knowing that the child pornography specified in the indictment was on his computer. Figueroa's attorney asked him at trial, "when was the first time that you ever saw any of these videos or photographs?" to which Figueroa replied, "Now, here."

Second, the facts presented at trial suggest at times a "conscious course of deliberate ignorance." Id. For example, Figueroa asserted that "fellow university students and fellow neighbors" used his computer, insinuating that someone else downloaded child pornography onto his computer. In fact, if other people downloaded some files with these explicit file names onto Figueroa's computer, and saved them in a LimeWire folder bearing his name, one that Figueroa used frequently, a jury could reasonably conclude that Figueroa "closed his eyes to a fact that otherwise would have been obvious to him." Similarly, Figueroa

-23-

asserted that his innocuous LimeWire searches for music yielded child pornography results. Figueroa testified that when he downloaded the "Bambina" child pornography file found on his computer he had intended to download photographs, music and videos of "El Bambino," a recording artist. The "Bambina" file was saved to the folder entitled "C\Documents and Settings\Alejandro\MyDocuments\My Chat Logs\LimeWire\Incomplete\New Folder." To the extent that Figueroa inadvertently downloaded child pornography when he searched for "El Bambino," and that he subsequently saved that file in a folder bearing his name, and did so numerous times, suggests a deliberate ignorance of the child pornography on his computer.

Third, taken as a whole, the instruction cannot be misunderstood as "mandating an inference of knowledge." <u>Id.</u> The district court instructed the jury that, in determining whether Figueroa acted knowingly, they "<u>may</u> infer" that he had knowledge "<u>if</u>" they found he "deliberately closed his eyes." (emphasis added). Such an instruction gave the jury discretion to decide whether Figueroa acted knowingly. <u>See</u> <u>United States</u> v. <u>Anthony</u>, 545 F.3d 60, 64 (1st Cir. 2008) (rejecting a defendant's argument that the willful blindness instruction given at his trial "would lead a jury to convict based on 'reckless' ignorance rather than deliberate ignorance").

Finally, contrary to Figueroa's contention that the instruction allowed the jury to convict him of a violation of § 2252(a)(4)(B) by a less stringent requirement than "knowingly," a willful blindness instruction is one way in which a jury can permissibly find that a defendant acted knowingly. See Nancy Torresen, 2015 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit (2015), available at http://www.med.uscourts.gov/pdf/crpjilinks.pdf Instruction 2.16 ("'Willful Blindness' As a Way of Satisfying 'Knowingly'") ("In deciding whether [defendant] acted knowingly, you may infer that [defendant] had knowledge of a fact if you find that [he/she] deliberately closed [his/her] eyes to a fact that otherwise would have been obvious to [him/her]."). The district court did not err in providing the willful blindness jury instruction.

## B. The Affirmative Defense Set Forth in 18 U.S.C. § 2252(c)

Figueroa contends that the district court erred when it failed to address the § 2252(c) affirmative defense in its jury instructions. The affirmative defense states in relevant part:

> (c) It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant --
> (1) possessed less than three matters containing any visual depiction proscribed by that paragraph; and
> (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof --

-25-

> (A) took reasonable steps to destroy each such
> visual depiction . . . .

After the jury instructions were read, Figueroa objected to the district court's failure to include the affirmative defense instruction. The district court declined to give the instruction because "there are more than three images [of child pornography] in this case." In his brief on appeal, Figueroa insists that this ruling of the district court took from the jury its duty to determine "whether each alleged image depicted a minor and . . . whether this particular minor was engaged in sexually explicit conduct."

Figueroa's suggestion that the failure to instruct the jury on the affirmative defense meant that the government no longer had the burden to prove beyond a reasonable doubt that he knowingly possessed images of actual children engaged in pornographic acts is simply not accurate. The district court instructed the jury that to find Figueroa guilty of knowing possession of child pornography:

> [Y]ou must be convinced that the Government
> had proven each of these things beyond a
> reasonable doubt: First, that the defendant
> knowingly possessed one or more matters which
> the defendant knew contained a visual
> depiction of one or more minors engaging in
> sexually explicit conduct. . . . that one or
> more of the visual depictions is of a minor
> engaging in sexually explicit conduct. . . . A
> minor is a person under the age of 18 years.
> Child pornography is any photograph, film,
> video, picture, computer image or computer
> generated image of sexually explicit conduct
> that was produced using an actual person under

the age of 18 engaging in sexually explicit conduct. . . . The word "knowingly" as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

As these instructions make clear, the court instructed the jury that in order to find Figueroa guilty, the government had to prove each element of 18 U.S.C. § 2252(a)(4)(B) -- including that the possession was done knowingly and that the images depicted actual minors -- beyond a reasonable doubt.

To the extent that Figueroa is arguing, however inartfully, that the jury could have found that he possessed fewer than three depictions of child pornography and is entitled to the affirmative defense on that basis (an argument that the district court seemed to impute to him), the evidence simply does not support the instruction. In our de novo review of whether Figueroa was entitled to the affirmative defense, we must ask whether the evidence, taken in the light most favorable to Figueroa, plausibly supported his requested affirmative defense instruction. See Gamache, 156 F.3d at 9 (stating that "[a] criminal defendant is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it"). As already noted in our discussion of "Other Users' Access to Figueroa's Computer" as part of our sufficiency of the evidence analysis, supra, Figueroa acknowledged on cross-

examination that, prior to the seizure of his computer, he had downloaded and viewed "a good amount" of child pornography. When the prosecutor asked him if he had seen and deleted "[m]ore than one hundred" videos, Figueroa replied, "Yes, but that doesn't mean that I would see the entire video." The prosecutor then asked if he downloaded and viewed "more than 100 still images of child pornography" to which Figueroa responded, "[i]t may be, because I don't know an exact number." When the prosecutor showed Figueroa the eighteen still images of child pornography found on his computer, Figueroa admitted that he had not deleted any of them.

On this record, if a jury found that Figueroa knowingly possessed child pornography, it would have to find that he possessed more than two such images. The district court therefore did not err when it declined to give Figueroa's proposed affirmative defense instruction. See United States v. White, 506 F.3d 635, 642 (8th Cir. 2007) (holding that defendant who possesses "more than three images of child pornography" is "not entitled to the [§ 2252(c)] affirmative defense").

## C. Inconsistent Mental State

Finally, Figueroa argues that the district court "serrated Appellant's right and the role of the jury" when it failed to provide an inconsistent mental state instruction. Figueroa submitted a proposed jury instruction derived from First Circuit pattern jury instruction 5.02, "Mental State That Is

Inconsistent with the Requisite Culpable State of Mind." That proposed instruction stated:

> Evidence has been presented of Alejandro Figueroa Lugo's [carelessness; negligence; ignorance; mistake; good faith; abnormal mental condition; etc.]. Such act [sic] may be inconsistent with the requisite culpable state of mind. If after considering the evidence of the charged crimes, together with all the other evidence, you have a reasonable doubt that Alejandro Figueroa Lugo acted [with the] requisite culpable state of mind, then you must find Alejandro Figueroa Lugo not guilty.

In declining to give the proposed instruction, the district court stated:

> I think that other instructions given concerning "knowingly" [are] sufficient for the jury to take that into consideration . . . . [T]he instruction that you want me to give . . . is covered by the . . . instructions in here that talk about knowingly . . . -- it can't be negligence or mistake or things like that.

The district court was correct in asserting that the proposed instruction was "substantially covered by the charge as rendered." Baird, 712 F.3d at 628. The district court instructed the jury that the word "knowingly," as used in its instructions, "means that the act was done voluntarily and intentionally and not because of mistake or accident." It further stated that "[m]ere negligence or mistake . . . is not sufficient. There must be a deliberate effort to remain ignorant of the fact." As we have said before, "[i]n formulating jury instructions, a district court is not required to parrot the language proffered by the parties."

-29-

United States v. McFarlane, 491 F.3d 53, 59 (1st Cir. 2007) (internal quotation marks omitted). Rather, district courts have broad discretion to choose the "precise manner" in which they frame their instructions. Id. The district court did not err when it declined to give Figueroa's proffered inconsistent mental state instruction because the jury instructions it provided state that Figueroa could not be convicted of possessing child pornography unless the jury determined beyond a reasonable doubt that he knowingly possessed the videos and images in question.

## IV.

There was sufficient evidence for a reasonable jury to convict Figueroa of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Additionally, the district court's willful blindness instruction did not confuse or mislead the jury and therefore was not in error. Finally, Figueroa was not entitled to the § 2252(c) affirmative defense or the inconsistent mental state instructions for which he argued.

Affirmed.