# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1911
_____

United States of America

*Plaintiff - Appellee*

v.

Keith Michael Novak

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 10, 2017
Filed: August 9, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

During a warrant search of Keith Michael Novak's apartment in Maplewood, Minnesota, FBI agents seized more than thirty electronic devices. Agents then obtained a new search warrant for child pornography and conducted time-consuming forensic searches of a heavily encrypted Dell laptop computer and an external USB hard drive that was connected to the laptop when the devices were seized. Hundreds of images and videos of children engaged in sexually explicit activities were

recovered. At a three-day trial, the government introduced forensic evidence linking Novak to the encrypted child pornography on the external hard drive and internet pornography searches on the laptop. The jury convicted Novak of one count of interstate transportation of child pornography and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(1), (a)(4)(B), (b)(1), and (b)(2). Varying downward from the advisory guidelines range, the district court[1] sentenced Novak to 144 months in prison.

Novak appeals, arguing the district court erred in admitting evidence of adult pornographic materials found on his devices, and in providing a willful blindness instruction to the jury, contentions we review for plain error. See United States v. Pirani, 406 F.3d 543, 550 (8th Cir.) (en banc), cert. denied, 546 U.S. 909 (2005). He also argues the district court imposed a substantively unreasonable sentence, an issue we review under a highly deferential abuse-of-discretion standard. See United States v. Roberts, 747 F.3d 990, 992 (8th Cir. 2014). We affirm.

## I. Evidentiary Issues.

Novak argues the district court committed plain error when it permitted the government to introduce two types of unfairly prejudicial evidence. First, FBI Special Agent Christopher Crowe's testimony described adult pornographic materials found on the laptop computer's encrypted external hard drive. Second, Agent Crowe's testimony described images saved to the laptop's internal hard drive as reflecting searches for sexual encounters with a transsexual woman. Having failed to object to this evidence at trial, Novak can prevail on appeal only by showing that admission was "an obvious error that affected his substantial rights, and that the error seriously

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Demery, 674 F.3d 776, 780 (8th Cir. 2011).

At trial, the government introduced evidence that five images the jury found to be child pornography had been downloaded and saved to an encrypted folder "C" on the external hard drive (Exhibit 4) attached to Novak's laptop computer (Exhibit 3). The central issue was whether Novak "knowingly" possessed and transported this contraband. His defense was that he had no knowledge of the child pornography on the external hard drive, that he only used the hard drive to store movies and music, and that someone else must have used his devices to search for child pornography and store it without his knowledge.

When the devices were seized, the laptop's internet history, cache, and cookies were wiped clean, and a program called "Eraser" made deleted data unreviewable. However, the FBI discovered that a "Foxtab" extension on the laptop's Firefox web browser had stored over 5,500 images of websites viewed between April 2012 and October 2012 in a file on the laptop's hard drive. These images included searches conducted under Novak's login for child-pornography-related terms. For example, a search was conducted under Novak's login on April 28, 2012 for "jailbait," and a July 10 Foxtab image showed a search for "sibso." Agent Crowe testified that jailbait is a term commonly used to search for child pornography, and sibso is a child pornography term that stands for "sibling significant other."

Encryption software also made files difficult to detect and view on the external hard drive until agents discovered the presence of TrueCrypt, an encryption software that Novak's work as an Army intelligence analyst gave him the proficiency to use to encrypt his personal devices. The FBI's Cryptographic Electronic Analysis Unit was able to identify the password for an encrypted volume stored on the hard drive. Inside this volume, agents discovered thousands of files organized into roughly two dozen folders, including folder "C" containing hundreds of images and videos of child

pornography. Most folders were named with one or two letters. One was labeled "X Pics" and others had explicitly pornographic titles. The folders contained pornographic images grouped neatly into categories -- for example, "B" for bestiality, "CL" for Craigslist postings seeking sex meet-ups with transsexuals, "L" for cartoon anime depicting children engaged in sex, and "X Pics" for nude images of Novak.

Novak testified that he acquired the Dell laptop in April 2012 when his friend, Lee Smith, who worked at Fort Bragg as a handyman, asked Novak to take the laptop from a secure area of the Fort Bragg Rec Center and install a new operating system. Novak used the laptop at Fort Bragg until Smith helped him move from North Carolina to Minnesota in mid-July. Smith controlled the laptop in a separate vehicle throughout the move and sold it to Novak at the end of the trip for $200. Novak testified that he had no knowledge of the encrypted files on the hard drive, which he used to store movies and iTunes. According to Novak, other soldiers frequently borrowed his laptop while he was at Fort Bragg; someone else created a TrueCrypt volume on the external hard drive and saved child pornography and other images in the encrypted volume. Novak admitted that "selfie" images in the folder labeled "X Pics" were of him, but denied that he placed them in the encrypted volume.

To link Novak to the encrypted "C" folder containing child pornography found on the external hard drive, FBI Special Agent Christopher Lester, a member of the Computer Analysis Response Team who searched Novak's apartment and helped decrypt his devices, testified that Foxtab images showed child pornography viewed on the laptop within seconds of identical images being saved to the encrypted "C" folder on the external hard drive, evidence the two devices were connected when the child pornography was accessed, as they were when seized in Novak's apartment. Agent Crowe then explained, in the testimony here at issue, how each of the folders in the encrypted hard drive volume evidenced Novak as the file creator. For example, the "X Pics" folder contained nude photos of Novak. The "CL" folder contained transsexual Craigslist postings similar to Foxtab images found on Novak's laptop.

-4-

Crowe's testimony supported an inference that pornographic images in the "C" folder were part of a larger pornography collection carefully organized into categories:

> Q: Can you give us a . . . a brief overview of what you found between [the] "C" and "X Pics" [folders in the encrypted volume]?
>
> A: I can. Every single one of these folders contains pornography. This one, the "CL", contains files saved from Craigslist. . . . This is just pornography where women are involved in having sperm ejaculated on them. . . . This picture right here is a picture of the Defendant. This picture right here, there's a video in the file called "P" where it is a female being urinated on by several men. I believe that it is pornography dealing with transsexuals. I believe "B" is pornography that deals specifically with bestiality. . . .
>
> Q: Was there any anime on --
>
> A: Well, there was Japanese anime. I'm not sure if that was in "L". I believe "L", now that you mention it, was pornographic cartoons that were downloaded on the Internet or off the Internet. . . . Japanese anime of cartoon children. They are not real children.

Crowe testified that the volume was bulk transferred from another device between 11:56 p.m. on July 5 and 12:08 a.m. on July 6. Images recovered from the laptop showed Novak used the laptop to call his girlfriend on Skype three hours before the transfer. Similarities in the files' locations, creation times, and contents confirmed, in Crowe's view, that a single person created all the folders.

Government Exhibit 10, a summary of fifty images saved in the laptop's Foxtab folder, further connected Novak to the external hard drive folders containing child pornography and provided evidence that Novak transported the child pornography across state lines. Agent Crowe briefly described each individual image and its link to Novak. For example, Exhibit 12 was a Papa John's order from a store in Fort

Bragg, North Carolina from "KeithMNovak@gmail.com" on a day Novak was stationed at Fort Bragg. Exhibit 51 was a July 10, 2012, search by the same user that returned five child pornography images; the tab was closed fifteen minutes after the five images were saved in folder "C" on the external hard drive. In the testimony here at issue, Crowe testified that Exhibit 57 was a July 17 Craigslist posting titled "In need of ! ! ! M4T-24," which is a Craigslist redaction meaning "male for transsexual or transvestite." Exhibit 60 was a Minneapolis Craigslist post seeking a "casual encounter" with "T4M in St. Paul" on August 4, the day Novak completed his move to Minnesota.

Novak argues this evidence was unfairly prejudicial under Federal Rule of Evidence 403, which provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ignoring the stringent requirements of plain error review, Novak relies on two cases from other circuits in which admission of irrelevant, highly prejudicial pornographic evidence over timely defense objection was held to be reversible error, United States v. Harvey, 991 F.2d 981, 996-97 (2d Cir. 1993), and People of Guam v. Shymanovitz, 157 F.3d 1154, 1158 (9th Cir. 1998).

Here, the challenged testimony and exhibits were clearly relevant to the key disputed issue at trial: whether Novak was guilty of knowing possession and interstate transportation of child pornography found on his encrypted computer devices. Agent Crowe's analysis of multiple, pornography-laden folders carefully organized in the encrypted volume on the external hard drive was relevant to show that a single person created all of the folders, including folder "C" containing the child pornography Novak was alleged to unlawfully possess and transport. Crowe's testimony explaining the fifty Foxtab images found on the internal hard drive established an electronic link between the two devices, and the postings in Exhibits 57 and 60 for

-6-

"casual [sexual] encounters" in Fort Bragg and in Minnesota before and after Novak's move were further evidence of knowing possession and transport of the child pornography accessed in Exhibit 51 and immediately saved in folder "C." The probative value of this evidence would distinguish this case from Harvey even if Novak had timely objected. See United States v. Pruneda, 518 F.3d 597, 605 (8th Cir. 2008) (no abuse of discretion admitting relevant pornographic images); United States v. Kelley, 2017 WL 2820994, at *6 (8th Cir. Jun. 30, 2017) (no plain error).

Novak argues that Agent Crowe's testimony referencing deviant forms of adult pornography was so shocking that the danger of unfair prejudice substantially outweighed any probative value, and that this was merely cumulative evidence linking Novak to the child pornography on his devices. In effect, Novak invites us to conduct, on plain error review, the careful weighing the district court must conduct in deciding whether to exercise its discretion to exclude evidence under Rule 403:

> On objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. . . . [T]he judge would have to make these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in.

Old Chief v. United States, 519 U.S. 172, 182-83 (1997); see United States v. Evans, 802 F.3d 942, 946 (8th Cir. 2015); United States v. Becht, 267 F.3d 767, 772-74 (8th Cir. 2001).

Given the rigor of Rule 403 analysis and the broad discretion afforded the district court to admit probative evidence even when prejudicial, it is nearly impossible for a district court's admission of relevant evidence without a Rule 403

objection to be plain error. See United States v. Rizk, 660 F.3d 1125, 1132-33 (9th Cir. 2011); United States v. Sumlin, 271 F.3d 274, 283 (D.C. Cir. 2001). But in any event, in this case, the evidence in question was highly relevant to Novak's defense at trial, and testimony briefly summarizing shocking computer images linking Novak to the child pornography saved in encrypted folder "C" was far less prejudicial than alternatives such as visual depictions of folder contents. Cf. United States v. Carter, 410 F.3d 1017, 1023-24 (8th Cir. 2005). As in Kelley, there was no abuse of discretion, much less plain error.

## II. A Jury Instruction Issue.

Novak next argues that the district court committed plain error by providing the jury a willful blindness, or deliberate ignorance, instruction. Before the jury instruction conference near the end of trial, the parties submitted proposed instructions. The government proposed a willful blindness instruction; the defense did not. Before the conference, the district court distributed proposed instructions that included a willful blindness instruction. At the conference, the court went instruction-by-instruction, asking for comments. Neither party objected to any instruction. Unopposed No. 9 instructed the jury that it could find Novak acted knowingly if it found he "deliberately closed his eyes to what would otherwise have been obvious to him." The instruction cautioned, "You may not find the defendant acted 'knowingly' if you find he was merely negligent, careless, or mistaken."

On appeal, Novak argues it was plain error to instruct on willful blindness "when no evidence supported that instruction." Acknowledging that our review is for plain error, Novak argues that the instruction was prejudicial "because it allowed the jury a factually-insufficient and constitutionally-deficient path around the knowledge element" of the charged offenses. In addition to laboriously discussing many decisions deciding this issue when it was properly preserved -- which are largely irrelevant on plain error review -- Novak relies on United States v. Fast Horse, 747

F.3d 1040, 1042-44 (8th Cir. 2014), in which a divided panel held that the district court committed plain error when it failed to instruct that knowledge *was an element of the charged offense*, as we had held in an intervening en banc decision.

Fast Horse is of course binding on our panel, but we conclude it is manifestly distinguishable. "A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." United States v. Delgrosso, 852 F.3d 821, 828 (8th Cir. 2017) (quotation omitted). "Ignorance is deliberate if the defendant was presented with facts that put [him] on notice that criminal activity was particularly likely and yet [he] intentionally failed to investigate those facts." United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004). The instruction should not be given "if the evidence in a case points solely to either actual knowledge or no knowledge of the facts in question." United States v. Hernandez-Mendoza, 600 F.3d 971, 979 (8th Cir. 2010) (quotation omitted), cert. denied, 131 S. Ct. 1568 (2011).

Here, aware of these well-established principles, the district court concluded that, even if the jury believed Novak's implausible claim that another person using his devices must have accessed child pornography and stored it on the external hard drive, there was sufficient evidence that he deliberately turned a blind eye to this clearly illicit activity to warrant a deliberate ignorance instruction. Cf. United States v. Figuerroa-Lugo, 793 F.3d 179, 192 (1st Cir.), cert. denied, 136 S. Ct. 559 (2015) (willful blindness instruction proper when defendant asserted others used his computer to download child pornography). Defense counsel, likewise aware of the governing law, did not object when invited by the court to do so.

Plain error review requires error that was "plain" -- hardly the case here -- *and* error that affected Novak's substantial rights and seriously affected the fairness or integrity of the trial. The risk of prejudice from an improper willful blindness instruction is "the possibility that the jury will be led to employ a negligence standard

and convict a defendant on [that] impermissible ground." United States v. White, 794 F.2d 367, 371 (8th Cir. 1986) (quotation omitted). Here, that risk was "adequately addressed" by the admonition in Instruction No. 9 that the jury may not find that Novak acted knowingly if it found he was merely negligent, careless, or mistaken. United States v. Parker, 364 F.3d 934, 947 n.3 (8th Cir. 2004); accord United States v. Trejo, 831 F.3d 1090, 1095 (8th Cir. 2016). There was no plain error.

## III. The Sentencing Issue.

The district court determined that Novak's advisory guidelines range was 151 to 188 months and sentenced him to 144 months in prison. On appeal, Novak argues the sentence is substantively unreasonable. He attacks the child pornography advisory guideline as arbitrary and unsupported by empirical evidence, ignoring our repeated holding that "a district court may disregard the child pornography sentencing guideline on policy grounds [but] is not required to do so." United States v. Burns, 834 F.3d 887, 889 (8th Cir. 2016) (quotation omitted). "[O]ur appellate role is limited to determining the substantive reasonableness of a specific sentence where the advisory guidelines range was determined in accordance with [U.S.S.G.] § 2G2.2." United States v. Shuler, 598 F.3d 444, 448 (8th Cir.), cert. denied, 560 U.S. 975 (2010). Here, the district court varied downward and sentenced Novak below his advisory range, making it "nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Deering, 762 F.3d 783, 787 (8th Cir. 2014) (quotation omitted). The district court did not abuse its "wide sentencing discretion." Roberts, 747 F.3d at 992.

The judgment of the district court is affirmed.

KELLY, Circuit Judge, dissenting.

In my opinion, it was plain error to give the jury a willful blindness instruction in this case. A willful blindness instruction is appropriate only when the evidence is sufficient to support a jury's finding that the "defendant was aware of facts that put him on notice that criminal activity was probably afoot and deliberately failed to make further inquiries, intending to remain ignorant." United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010). A willful blindness instruction "should not be given . . . when the evidence points *solely* to either actual knowledge or no knowledge of the facts in question." Parker, 364 F.3d at 946 (alteration in original) (internal quotation omitted). Here, the government's theory of the case was that Novak had actual knowledge of the child pornography stored in an encrypted file on his external hard drive. Novak's defense was that he did not, and indeed could not, know about the child pornography under encryption. Even assuming there was evidence that Novak was on notice that his hard drive might contain contraband images, the government presented no evidence that Novak "deliberately failed to make further inquires, intending to remain ignorant." Chavez-Alvarez, 594 F.3d at 1067. See Trejo, 831 F.3d at 1095 ("A willful blindness . . instruction is appropriate when there is evidence to support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts" (internal quotation omitted)). Without any such evidence, a willful blindness instruction should not be given. Cf. id. (government presented sufficient evidence to warrant willful blindness instruction where defendant claimed codefendant paid her a large amount of money simply to store clothes on her property; "[s]cales, a firearm, and $4,000 in small denominations" were located in defendant's house; and defendant was observed walking around property where methamphetamine found); United States v. Sigillito, 759 F.3d 913, 940 (8th Cir. 2014) (willful blindness instruction warranted in prosecution for crimes related to Ponzi scheme where "[t]he evidence showed that if [defendant] lacked knowledge, it was because he deliberately avoided acquiring it"); Florez, 368 F.3d at 1045 (willful blindness jury instruction

-11-

appropriate where evidence supported finding that even if defendant did not have actual knowledge, "it was only because she chose not to investigate and effectively buried her head in the sand").

Because the evidence in this case pointed only to actual knowledge or no knowledge, I believe there is a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different" and that "failing to correct the district court's error would result in a miscarriage of justice." Fast Horse, 747 F.3d at 1043–44 (internal quotations and alterations omitted). I would reverse Novak's conviction and remand for a new trial.

_____