STATE of Tennessee, Appellee,

v.

Anthony E. WALTON, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

March 7, 1984.

Permission to Appeal Denied by Supreme Court June 18, 1984.

Phillip H. Miller, Jude T. Lenahan, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Kimberly J. Dean, Asst. Atty. Gen., John Zimmermann, Weakley E. Barnard, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Anthony E. Walton, was convicted of armed robbery and sentenced to serve a term of 12 years in the State penitentiary. On this appeal, he insists that pretrial identification procedures were unduly suggestive, that the State conducted unlawful cross examination of him; and that he was denied a speedy trial. We find the issues to be without merit and affirm the judgment of conviction.

The defendant does not question the sufficiency of the evidence. Nevertheless, we have reviewed the evidence and found that it meets the standard required by Rule 13(e), T.R.A.P. The prosecution arose from a robbery of Ms. Wendla Wiley, by two black males at a car wash. The victim described the getaway car as a 1966 or 1967 model Mustang and she obtained the license number. The car was registered in the name of the defendant. Being unable to make a positive identification from the photographs, she picked three photographs from an array of seven. One of the photographs she selected was that of the defendant. She later made a pretrial identification of the defendant at a preliminary hearing and also at the trial of the case.

We first address the issue attacking the reliability of the pretrial identification. The crime occurred on Monday, June 11, 1979 and the preliminary hearing took place on November 3, 1980. A pretrial motion was filed to suppress the evidence that the victim identified the defendant at the preliminary hearing. After a hearing, the motion to suppress was overruled by the trial judge.

The courtroom was full of people on the day of the preliminary hearing, with many of them standing. One witness estimated that there were 100 people in the spectator's section of the courtroom. There was evidence, including the testimony of the defendant's attorney, that the District Attorney asked the victim, while standing at the front of the courtroom, "Do you see the person in the courtroom?" The victim identified the defendant who was sitting approximately 20 feet away from her. According to this version of the evidence, the District Attorney gave the victim no hint as to which person the State suspected. The trial judge accredited this version of the facts, which indicated no suggestion by the State.

Charles Scott, an investigator for the public defender's office, was at the preliminary hearing assisting the defendant's attorney. Mr. Scott was acquainted with the victim. He testified that the District Attorney brought the defendant within touching distance of the victim, and asked the victim, "Is this the man that robbed you?" Mr. Scott testified that the defendant requested this procedure.

All of the witnesses, including defense counsel and Mr. Scott, testified without contradiction, that the procedure used was insisted upon by the defendant. The evidence indicated that the defendant's attorney advised him against agreeing to a courtroom identification, but she acquiesced when the defendant insisted. The State did no more than accede to the defendant's demand. Under these circumstances, the defendant cannot be heard to complain of the procedure employed. *State v. Tate*, 615 S.W.2d 161 (Tenn.Crim. App.1981).

In the next issue, the defendant states that "Cross examination of the appellant on the basis of a metropolitan

Davidson County warrant for giving false information was reversible error under *Morgan v. State,* 541 S.W.2d 385 (Tenn. 1976)."

The defendant had previously been convicted for the violation of a City or Metro Ordinance prohibiting the giving of false information to a police officer. The defendant argues that a municipal court conviction is not a conviction for a crime, within the meaning of Federal Rule 609, adopted by the Supreme Court in the *Morgan* case. This question is not before us. The trial court refused to admit evidence of the municipal court conviction but permitted the State to cross-examine the defendant concerning the specific conduct pursuant to Federal Rule of Evidence 608(b), adopted by the Supreme Court in *Morgan, supra.*

The evidence given by the defendant was that he took money belonging to his employer, Kentucky Fried Chicken, to the bank for deposit. He falsely reported to the police that he had been robbed of the money before depositing it. The officers found the money in his automobile, together with the money bag and the deposit slip.

Federal Rule 608(b), provides:

"(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined his testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

The evidence was probative of truthfulness or untruthfulness of the testifying defendant. The trial judge instructed the jury that the evidence could only be considered for impeachment purposes and could not be considered as substantive evidence of guilt. Before the trial judge admitted the evidence, a jury-out hearing was held in which the court could determine the substance of the evidence and weigh probative value against prejudicial effect. The trial judge did not abuse his discretion in admitting the evidence.

■ The defendant insists that a foundation should have been laid before questioning him about this conduct. He says that the foundation would not support the questioning because the defendant previously had testified that he had, on occasion, told lies. However, we do not agree that any foundation must be laid before examining a witness pursuant to Rule 608(b). This is not an impeachment under the rule requiring a foundation to show prior inconsistent statements. Rule 608(b) requires no such foundation.

■ The defendant insists that his credibility cannot be tested under Rule 608(b) because he made no attempt to establish his good character. We disagree. As we understand the *Morgan* case, the State is entitled, within the guidelines of *Morgan,* to attack the credibility of any witness, including a defendant testifying in his own behalf.

Excessive and irrelevant details concerning bad acts should be excluded. *Wilson v. State,* 548 S.W.2d 323 (Tenn.Crim.App. 1976). However, this does not mean that the basic facts of these specific instances cannot be given. *United States v. Dennis,* 625 F.2d 782, 799 (8th Cir.1980). The defendant may be asked the nature of the false statement made to the police officer and questioned concerning the finding of the money, money bag, and bank receipt in his automobile. We find no merit in this issue.

■ The defendant next complains that the delay in trial violated his Fifth Amend-

ment due process rights and his Sixth Amendment speedy trial rights. We first consider whether his due process rights were violated.

The crime occurred on June 11, 1979. The victim obtained the license number of the defendant's automobile and identified it as the getaway car. She could not identify with absolute certainty the perpetrator of the crime from photographs. No positive identification was made by the victim until the preliminary hearing on November 3, 1980. The defendant says that his due process rights were violated because he was not arrested until October 29, 1980.

The "due process right," which the defendant claims was violated, is discussed in *State v. Baker*, 614 S.W.2d 352 (Tenn. 1981). The *Baker* case, after citing several cases, observes that an indictment must be dismissed if it is shown that preindictment delay caused substantial prejudice to a defendant's right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. The *Baker* opinion further observes that the burden of proof is upon the accused to show that the delay between the time of the offense and the time of the initiation of prosecution was prejudicial and not for a legitimate reason.

There is no proof in this record of either actual prejudice to the defendant or of the reasons for the delay in his arrest. The record does not reflect when a warrant was issued. It is not shown why, if not issued until shortly before his arrest, the warrant was not promptly served. Our later discussion with respect to whether the defendant was prejudiced, is also applicable here. It is sufficient at this time to say that the defendant did not prove substantial prejudice or intentional delay for tactical purposes. He is required to prove both. See *State v. Baker, supra*.

■ We now address the speedy trial issue. At the outset, we observe that no Sixth Amendment speedy trial problem arises until after formal accusation against the defendant, either by arrest or grand

jury action. See *State v. Baker, supra* and the cases therein cited.

The record leaves much to be desired in giving the history of the case. It consists only of remarks of counsel and the court. We have made a tedious study of this colloquy in an effort to focus the history of the case. The indictment was filed on January 28, 1981 and the defendant was arraigned on February 11, 1981. The case was first set for trial on June 3, 1981, but was continued on application of the defendant to October 26, 1981. The case could not be tried October 26, 1981, because of an overloaded trial docket and was continued to March 23, 1982. The defendant again applied for a continuance from March 23, 1982 and it was reset, on the defendant's application, for June 16, 1982. However, on that date, it was continued again by agreement of the State and the defendant and was reset for September 28, 1982. It was continued from September 28, 1982, on the defendant's application, to give him time to procure out of state witnesses. The court proposed a setting for November 17, 1982, but it was passed to December 15, 1982, because the victim planned to be in Mexico on November 17, 1982. The case was tried on January 26, 1983. The record does not reveal why the case was passed from December 15, 1982 until January 26, 1983.

■ In determining speedy trial questions, a four-part balancing test was established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Supreme Court of this State adopted the test in *State v. Bishop*, 493 S.W.2d 81 (Tenn.1973). The factors which we must analyze in applying this test are: (1) the length of the delay; (2) whether the defendant asserted his right to a speedy trial; (3) the prejudice emanating from the delay; and, (4) the reason for the delay. We consider these four factors.

(1) The length of delay. The length of the delay from indictment to trial was two years. A delay of two years is not so extreme per se that prejudice would ·be

presumed from this factor alone. *State v. Bishop, supra.*

(2) Whether the defendant asserted his right to a speedy trial. It is the defendant's contention that an attorney who had formerly represented him filed a motion for a speedy trial on December 21, 1981. There was no such motion in the court file. The attorney who represented the defendant testified that she had prepared a motion and the State had received a copy of it. She had no specific recollection of filing the motion, but she usually took them to the Clerk's office and saw that they were marked filed. She talked with a retired trial judge's clerk over the telephone who told her that she saw the motion on the judge's desk before his retirement. The clerk did not testify. The trial judge found that the defendant did not establish that the motion was in fact filed. We agree that proof of the filing left much to speculation.

However, even if the motion was filed, it is clear that it was never brought to the trial court's attention until January 26, 1983, the day of the trial. Any such motion that might have been filed was also diluted by the defendant's other acts evidencing that he did not sincerely desire a speedy trial. The defendant had already made one motion for a continuance when the motion was filed on December 21, 1981. The case was set on March 23, 1982, three months after the filing of the motion when the case was continued at defendant's request to June 16, 1982, and he agreed to a continuance from June 16, to September 28, 1982. On September 28, 1982, he again desired a continuance to procure witnesses. This factor must be weighed against the defendant.

(3) Prejudice emanating from the delay. Defendant's defense was an alibi. His contention was that he was visiting in Alabama with his girlfriend. He established the date of his alibi defense by referring to his employer's records, showing that he was not working at that time and reasoned that this was when he took the trip to Alabama. Although defense witnesses could not specifically recall the date of the trip to Alabama, they fixed the time by referring to the record. It would be unusual indeed if the specific date of such a trip could be recalled even as much as four or five months later, without associating it with a prominent date. We find no prejudice.

(4) The reason for the delay. As previously discussed, the delay was caused primarily by the defendant's request for three continuances and by his agreement to a fourth. One continuance was occasioned by a crowded docket and a one-month's delay was caused by the request of the victim, who had been attending every court setting up to September 28, 1982. The record does not reveal the cause of the delay from December, 1982 to January 1983. This factor is also weighed against the defendant.

■■■ Upon balancing, we conclude that the defendant's speedy trial rights were not violated.

Finding no error, we affirm the judgment of the trial court.

WALKER, P.J., and SCOTT, J., concur.