# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE
## August 12, 2025 Session

## STATE OF TENNESSEE v. JAMES ANDREW DIDOMENICO

**Appeal from the Circuit Court for Williamson County**
**No. W-CR220446   Joseph A. Woodruff, Judge**

_____

### No. M2024-01368-CCA-R3-CD

_____

A Williamson County jury convicted the Defendant, James Andrew DiDomenico, of four counts of rape, and the trial court imposed an effective sentence of ten years' incarceration. On appeal, the Defendant raises several issues. First, he contends that the trial court committed the following trial errors: (1) excluding evidence that the victim was dating a former client; (2) admitting cumulative testimony that repeated the victim's account; (3) admitting testimony concerning letters sent by the Defendant's divorce attorneys to the victim; and (4) refusing to instruct the jury on the defense of mistake of fact. He further argues that, even if these alleged errors are individually insufficient to warrant reversal, their cumulative effect deprived him of a fair trial. The Defendant also challenges the denial of his motion for a new trial based on purportedly newly discovered evidence, as well as the trial court's sentencing determinations. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Benjamin K. Raybin (on appeal) and David M. Hopkins (at trial), Nashville, Tennessee, for the appellant, James Andrew DiDomenico.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Stacey B. Edmonson, District Attorney General; and Jennifer Dungan and Jennifer Mason, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

The Defendant met the victim in 2011, and they dated for about four years. Despite several breakups, the couple eventually married in 2015 because the victim wished to have a child.

About six months into the marriage, the victim filed for divorce. After discovering that she was pregnant, she chose not to proceed with the filing. During this time, the Defendant allegedly became volatile, frequently accusing the victim of infidelity with clients and co-workers.

Although the couple remained married, the relationship continued to deteriorate. In March 2021, the victim again filed for divorce. After that filing, the parties agreed to live separately within the same home, with the Defendant staying in the guest bedroom while the victim remained in the primary bedroom.

On July 31, 2021, the victim went to bed in the primary bedroom. The Defendant came into the room and got into bed with her, despite their agreed sleeping arrangement. The victim asked him to go back to the guest bedroom, but the Defendant refused. The victim then put a king-size "barrier pillow" between herself and the Defendant. According to the victim, this was not the first time a barrier pillow was used and was a "very clear communication" saying, "don't touch me, don't come near me."

### A.    THE RAPE OF THE VICTIM AND THE EVENTS SURROUNDING IT

The couple had depositions scheduled in their divorce case for August 16, 2021. The victim had received written interrogatories from the Defendant's attorney, and the answers were due on August 13. The victim wrote a five-page response to the question of whether the Defendant was a good husband, citing every example she could think of that would indicate the Defendant was not. The answers were sent to the Defendant on August 13.

On August 14, the victim was taking a shower when the Defendant asked if he could join her. The victim said no, and the Defendant left. Later that night, as the victim was preparing for bed, she placed a barrier pillow between herself and the Defendant. The Defendant then threw the pillow toward her, but she replaced it once she was in bed. The

Defendant tried to convince the victim to have sex, but the victim said she did not want to and was going to sleep. The victim then took an Ambien, as she did every night, which made her fall asleep almost instantly. The Defendant was looking at the victim when she took the Ambien.

On a prior occasion, before she filed for divorce, the victim and the Defendant had sex after the victim had taken her Ambien. The victim did not remember "the middle of it" and told the Defendant that she did not want to do that again because she did not remember it. The Defendant stated that she should do it more because she was uninhibited.

On this night, after the victim took her Ambien, the Defendant leaned over the barrier pillow and told her that he had read her interrogatory responses about him. The Defendant asked if she was awake, and she said yes and told the Defendant to go to sleep.

The victim testified that she awoke to find her pajama pants and underwear pulled down. She further stated that the Defendant was penetrating her with his penis. The victim then pushed her hips backward, after which the Defendant got on top of her. The Defendant then performed oral sex on the victim and penetrated her again.

The next morning, the Defendant told the victim that "last night was great," and the victim responded, "No, you knew I was on Ambien. I was not okay with that." The Defendant responded, "That's not what your body said."

The victim called her parents and divorce attorney to tell them what happened. Her attorney was concerned about getting the Defendant out of the house and stated that he would call the Defendant's attorney to see if he could stay somewhere else. While she was away from the house, the Defendant texted the victim, "Before you make up your mind about last night . . . let me tell you how I viewed it before you write your final story."

The victim then went to the hospital and had an exam performed by a sexual assault nurse. The nurse told the victim that she could submit the results to the police anonymously or the victim could choose to include her name. The victim decided to submit it anonymously. The victim returned home to retrieve her belongings and never stayed in the home again.

## B. TRIAL AND APPEAL

A Williamson County grand jury indicted the Defendant on four counts of rape,[1] and the case proceeded to a jury trial in November 2023. At trial, the victim testified to the events described above. Additionally, the victim testified that she did not consent to having sex with the Defendant that night of August 14. The victim believed she said "no, no" at one point during the rape, but she was not entirely sure and said she did not want to lie under oath.

The Defendant also testified, describing a different version of events. When asked about the barrier pillow, the Defendant admitted that he understood that the pillow was a sign that the victim did not want him to touch her. He acknowledged that the barrier pillow was in place on the night of the rape. Later, the Defendant then testified that the barrier pillow was not a "no-go zone pillow" because they frequently had sex earlier in their marriage with the pillow in place.

The Defendant admitted that he and the victim engaged in sexual intercourse on the night in question, but testified that she never said "no" or otherwise indicated a lack of consent. He acknowledged that the victim frequently took Ambien but claimed he did not know whether she had taken it that night. He further stated that he had never observed her become "out of control" or "unable to control herself" while using Ambien. According to the Defendant, the victim gave him several positive signals that she was enjoying the encounter, and he had "no indication of [the victim not wanting to have sex] at all."

The jury found the Defendant guilty as charged on all counts, and in April 2024, the trial court imposed an effective sentence of ten years' incarceration. The Defendant filed a timely motion for a new trial, which was denied on September 9, 2024. He filed a timely notice of appeal four days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant raises several issues for our consideration. He first contends that the trial court committed the following trial errors: (1) excluding evidence

---

[1] Although the Defendant does not challenge the legal sufficiency of the convicting evidence, we summarize the charges for context. The indictment alleged two forms of penetration—vaginal and oral—under two statutory theories of liability: lack of consent and incapacity to consent. In total, this resulted in four counts charged by the grand jury: vaginal penetration under both theories (Counts 1 and 2) and oral penetration under both theories (Counts 3 and 4).

that the victim was dating a former client; (2) admitting cumulative testimony that repeated the victim's account; (3) admitting testimony concerning letters sent by the Defendant's divorce attorneys to the victim; and (4) refusing to instruct the jury on the defense of mistake of fact. The Defendant further maintains that, even if no single ruling independently warrants reversal, the cumulative effect of these alleged trial errors deprived him of a fair trial.

In addition, he challenges the trial court's denial of his motion for a new trial based on filings made in the parties' divorce proceedings, which he contends constituted newly discovered evidence. And finally, he argues that the trial court erred by denying an alternative sentence to incarceration and by denying his subsequent motion to reduce the sentence.

We address each of these issues in turn.

### A. EXCLUSION OF EVIDENCE THAT THE VICTIM WAS DATING A FORMER CLIENT

The Defendant argues that the trial court erred by excluding evidence that the victim was dating a former client at the time of trial. He also contends that this evidence would have bolstered the Defendant's testimony surrounding his actions and called into question the victim's credibility. The Defendant asserts that the evidence was admissible under Tennessee Rules of Evidence 402, 608, and 616, as well as his constitutional right to present a defense.[2] For its part, the State responds that the evidence was not relevant, and the trial court correctly excluded it. We agree with the State.

#### 1. Background

As background for this issue, the Defendant sought before trial to introduce evidence that the victim was in a current romantic relationship with a former client. He argued that the Defendant had suspected that the relationship existed at the time of the

---

[2] The Defendant also makes passing references to Tennessee Rules of Evidence 404 and 607 in his brief. However, he does not develop any argument regarding the applicability of these rules to the challenged evidence, nor does he otherwise cite or rely on them. Accordingly, we conclude that he has waived any issue related to Rules 404 and 607, and we decline to address them further. *See State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022), *no perm. app. filed*; Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

offense, though the victim denied it. He also asserted that this evidence would impeach the victim's allegation that his actions were "crazy" and show that the victim had a bias against him.

The Defendant further asserted that the victim had denied being in a relationship in her August 2021 divorce interrogatory responses. According to the Defendant, the victim disclosed the relationship only after a member of the Defendant's family saw her traveling with the man in January 2023, prompting her to amend her interrogatories. The trial court deferred ruling until trial.

At trial, the court held a hearing outside the jury's presence. The Defendant argued that the victim's testimony included repeated accusations of infidelity and, therefore, "opened the door" to questioning about whether she was romantically involved with a former client. The State responded that the victim would deny she was in a relationship at the time of the alleged rape and that the evidence was irrelevant. The trial court denied the motion, finding that the probative value of the proposed cross-examination was "slight" and outweighed by the danger of unfair prejudice.

### 2. Standard of Appellate Review

On appeal, we typically review questions involving the admission of evidence for an abuse of discretion. *See State v. Walton*, 673 S.W.2d 166, 169 (Tenn. Crim. App. 1984) (recognizing that impeachment by prior acts is reviewed for an abuse of discretion); *State v. Gilley*, 297 S.W.3d 739, 765 (Tenn. Crim. App. 2008) (so recognizing in the context of Rule 616). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Reynolds*, 635 S.W.3d 893, 921 (Tenn. 2021) (citation and internal quotation marks omitted).

### 3. Tennessee Rule of Evidence 608

Although the trial court did not cite a specific rule of evidence guiding its consideration, its analysis reflects the application of Tennessee Rule of Evidence 608(b). Rule 608(b) permits inquiry into specific instances of conduct on cross-examination if the conduct is probative of the witness's character for truthfulness or untruthfulness. *See State v. Dunn*, No. E2021-00343-CCA-R3-CD, 2022 WL 2433687, at *12 (Tenn. Crim. App. July 5, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). Before allowing such questioning,

the trial court must determine that the conduct has probative value, that a reasonable factual basis exists for the inquiry, and that the probative value outweighs any prejudicial effect. Tenn. R. Evid. 608(b); *State v. Morgan*, 541 S.W.2d 385, 390 (Tenn. 1976); *Tennessee Law of Evidence* § 6.08[7][e] (7th ed. 2024) ("Although nothing in Rule 608 so states, the court may have to make a third finding that involves balancing the probative value against the prejudicial effect of the evidence. . . . [T]he evidence should be excluded if the prejudicial effect outweighs its probative value.").

Applying these principles, we agree with the trial court's determinations. The probative value of asking about the victim's current relationship was minimal. Standing alone, the existence of that relationship had no bearing on her credibility at the time of trial. Its relevance depended entirely on inviting the jury to infer that a current relationship proved the existence of an earlier extramarital affair and, from there, to draw conclusions about her credibility regarding the charged offenses. Because the Defendant offered no proof that the relationship existed at the time of the alleged crimes, the proposed cross-examination would have encouraged speculation rather than grounded impeachment.

By contrast, the potential for unfair prejudice and confusion was substantial. Allowing the inquiry would have drawn the jury into collateral questions about the victim's personal life and relationships, inviting speculation about whether a present relationship implied a past affair. While that kind of backward inference carried little probative value, it also had a strong potential to distract from the central issues before the jury.

The risk was further amplified by the Defendant's reliance on the victim's civil interrogatory responses. The theory that the victim "hid" the relationship required the jury to evaluate whether she had a duty under the civil rules to supplement her responses "seasonably," whether she violated that duty, and whether any such violation supported an inference of dishonesty. *See* Tenn. R. Civ. P. 26.05. For the jury to use the evidence properly, the court would have had to instruct on civil discovery obligations wholly unrelated to the criminal charges. Introducing those collateral matters would only have obscured the central issue before the jury: whether the Defendant committed the charged offenses. Balancing the slight probative value against these serious dangers, the trial court acted well within its discretion in excluding the proposed cross-examination under Rule 608(b).

### 4.    Tennessee Rule of Evidence 616

The Defendant also argues that the trial court should have allowed the questioning pursuant to Tennessee Rule of Evidence 616. Although the trial court did not expressly

address this issue, Rule 616 allows a party to introduce evidence, through cross-examination or extrinsic proof, to show that a witness is biased in favor of or prejudiced against another party or witness. *See* Tenn. R. Evid. 616. Even so, evidence offered to demonstrate bias is still subject to exclusion under Rule 403 if the danger of unfair prejudice substantially outweighs its probative value. *See, e.g.*, *State v. Leach*, 148 S.W.3d 42, 57 (Tenn. 2004).

The Defendant contends that he should have been permitted to ask the victim about her current relationship with her former client to show bias and a motive to fabricate allegations against him. But, as we noted above, the record contains no indication that this relationship existed at the time of the offenses. Without such a connection, the evidence carried no meaningful probative value on the question of whether the victim was biased against the Defendant when she made her allegations. Because the proposed cross-examination lacked probative force on the issue of bias, the trial court did not err in excluding it. *See, e.g.*, *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994) (recognizing that a trial court may place limits on cross-examination that "take into account such factors as harassment, prejudice, issue confusion, witness safety, or merely repetitive or marginally relevant interrogation").

In sum, the trial court acted within its broad discretion in managing the scope of cross-examination. Whether framed under Rule 608(b) or Rule 616, the proposed inquiry carried little probative value and posed significant risks of prejudice and confusion. The Defendant is not entitled to relief.

### 5. Defendant's Right to Present a Defense

The Defendant alternatively argues that the trial court's refusal to admit this evidence violated his constitutional right to present a defense. The State responds that the Defendant has waived this claim by failing to object at trial on this ground. We agree with the State.

Ordinarily, an evidentiary challenge must be preserved in the trial court before it may be raised on appeal. *See State v. Gardner*, 716 S.W.3d 388, 416 (Tenn. Crim. App. 2024). To preserve an issue for appeal, a party must make a timely objection identifying a specific ground and then renew the claim in a motion for a new trial. *See, e.g.*, *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). Absent both steps, a party waives plenary review of an issue on appeal. *Id.* These principles apply equally when a defendant contends that the exclusion of evidence deprived him of the constitutional right to present

a defense. *See, e.g.*, *State v. Hinds*, No. E2022-00544-CCA-R3-CD, 2023 WL 5164634, at *27 (Tenn. Crim. App. Aug. 11, 2023), *perm. app. denied* (Tenn. Jan. 11, 2024).

A party may not, however, forgo an objection at trial and then try to preserve the issue by raising it for the first time in a motion for a new trial. As our supreme court has explained, "a party is bound by the ground asserted when making an objection to the admission of evidence and cannot assert a new or different theory to support the objection in the motion for new trial." *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020). This rule specifically applies when a party objects on non-constitutional grounds during trial and later seeks to reframe the issue as a constitutional violation after the conviction. *Id.*

In this case, although the Defendant raised this issue in his motion for a new trial, he never asserted during trial that exclusion of the evidence violated his constitutional right to present a defense. Instead, he argued only that the evidence was relevant to credibility. He now asks us to fault the trial court for failing to address a constitutional claim that was never presented for its consideration at trial. We respectfully decline to do so. *See State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *4 (Tenn. Crim. App. July 14, 2023) ("[W]e have been extremely hesitant to put a trial court in error where its alleged shortcoming has not been the subject of a contemporaneous objection." (citation and internal quotation marks omitted)), *no perm. app. filed*.

Because the Defendant failed to raise a constitutional claim during trial, he has waived plenary review of that issue on appeal. *See Gardner*, 716 S.W.3d at 417. Moreover, because the Defendant has not requested plain error review, we decline to conduct that analysis sua sponte. *See Ruiz*, 716 S.W.3d at 453. The Defendant is not entitled to relief.

## B.   ADMISSION OF CUMULATIVE EVIDENCE

The Defendant next argues that the trial court committed plain error when it allowed the State to present prior consistent statements made by the victim to various witnesses. Specifically, the Defendant argues that these statements were cumulative, misleading, and unfairly prejudicial to the Defendant pursuant to Tennessee Rule of Evidence 403. For its part, the State argues that the statements corroborated the victim's testimony, and the prosecution used these statements as evidence to prove its burden of establishing every element of the offense. We agree with the State.

### 1.    Background

As background for this issue, the victim testified that she disclosed the rape to her parents and neighbor the following day, sought treatment at a hospital, and later contacted law enforcement to obtain an order of protection.  To corroborate this account, the State called several witnesses.  Her mother and neighbor each testified that the victim reported the rape to them the day after it occurred.  The nurse who performed the sexual assault examination described both her standard practices and the procedures she followed during the exam in this case.

In addition, Lieutenant Stephen Hale testified that the victim reported the assault to him and described her efforts to secure an order of protection.  On appeal, the Defendant argues that the testimony from these additional witnesses was cumulative of the victim's own account and should have been excluded.

### 2.    Plain Error Review

As an initial matter, the Defendant concedes that he failed to lodge a timely objection to the evidence as being unnecessarily cumulative.  He, therefore, acknowledges that plenary review is unavailable and instead asks this court to consider the matter under the plain error doctrine.  *See State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *3 (Tenn. Crim. App. Oct. 30, 2023) ("[A] party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal."), *no perm. app. filed*.

Our supreme court has recognized that "[u]nlike plenary review, which applies to all claims of error that are properly preserved, plain error review is limited to those errors which satisfy five criteria."  *Vance*, 596 S.W.3d at 254.  These criteria are as follows:

(a)    the record must clearly establish what occurred in the trial court;

(b)    a clear and unequivocal rule of law must have been breached;

(c)    a substantial right of the accused must have been adversely affected;

(d)    the accused did not waive the issue for tactical reasons; and

(e)    consideration of the error is "necessary to do substantial justice."

*See, e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019). Importantly, the "defendant bears the burden of establishing all of these elements." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022). As such, an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021). "Whether the plain error doctrine has been satisfied is a question of law which we review de novo." *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015).

A core feature of plain error review is that it applies only to errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). The error must be "of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). Because of this demanding standard, "[o]nly rarely will plain error review extend to an evidentiary issue." *State v. Haymer*, 671 S.W.3d 568, 578 (Tenn. Crim. App. 2023) (citation omitted). Thus, in assessing evidentiary error under the fifth factor, the question is whether there exists a "significant probability that the jury *would have acquitted the Defendant* had the disputed testimony not been admitted." *Vance*, 596 S.W.3d at 256 (emphasis added).

Federal courts applying this principle in the context of Rule 403 are of the same mind. As the Eighth Circuit has cautioned, "[g]iven the rigor of Rule 403 analysis and the broad discretion afforded the district court to admit probative evidence even when prejudicial, it is nearly impossible for a district court's admission of relevant evidence without a Rule 403 objection to be plain error." *United States v. Novak*, 866 F.3d 921, 926 (8th Cir. 2017). Stated more directly, "where the same evidence comes before the jury properly and improperly, the improper admission of cumulative evidence is not plain error." *United States v. Leo*, 941 F.2d 181, 194 (3d Cir. 1991); *United States v. Simon*, 12 F.4th 1, 43 (1st Cir. 2021) ("Cumulativeness is almost always a matter of degree, and the defendants' claim of cumulativeness—if it suggests an error at all—at most suggests an error that is neither clear nor obvious. Plain error is, therefore, plainly absent.").

Here, we have significant reservations about whether the challenged testimony was needlessly cumulative at all. More to the point, the Defendant has not shown that its exclusion would have created a significant probability of acquittal, as required under the fifth plain error factor. *See Vance*, 596 S.W.3d at 256. The jury heard the victim's detailed account and evaluated her credibility firsthand. The State also introduced additional corroborating evidence, including eyewitness testimony regarding the Defendant's conduct and expert medical testimony explaining why the absence of physical injury did not undermine the victim's allegations.

Although the testimony from these other witnesses corroborated the victim's account, their exclusion would not have eliminated the victim's testimony itself or the other independent evidence supporting the verdict. In light of the full evidentiary record, removing this testimony would not have created the significant probability of acquittal required to establish plain error. Because the Defendant's argument falls well short of satisfying the demanding fifth factor, he is not entitled to relief.

## C. ADMISSION OF TESTIMONY REGARDING LETTERS FROM THE DEFENDANT'S ATTORNEYS

The Defendant next argues that the trial court erred by permitting the State to elicit testimony concerning two letters sent by his civil attorneys during the pending divorce proceedings. He maintains that the testimony was inadmissible under Tennessee Rules of Evidence 402, 403, 408, and 802. The State responds that the Defendant himself "opened the door" to this testimony when he claimed that the victim fabricated her allegations to obtain an advantage in the divorce. We agree with the State.

### 1. Background

As background for this issue, the State and the defense disputed whether the victim pursued the criminal charges as leverage in the parties' divorce proceedings. That dispute gave rise to testimony and argument concerning two letters sent by the Defendant's divorce attorney, which the trial court addressed in a series of rulings.

Following the victim's cross-examination, the State argued that defense counsel had suggested the victim pursued the criminal charges to gain leverage in the divorce proceedings. At a bench conference, the State sought to introduce a letter from the Defendant's divorce attorney proposing that the Defendant would agree to a divorce if the victim persuaded the District Attorney's Office to dismiss the pending criminal charges. Defense counsel objected, contending that the letter would mislead the jury, and the trial court agreed. The court excluded the letter itself but cautioned defense counsel that he could not argue that the victim was using the criminal prosecution as leverage in the divorce.

Later, the State maintained that the defense had nonetheless implied the victim fabricated her allegations to gain an advantage in the divorce. To support this claim, the State pointed to three parts of the record: counsel's opening statement, in which he suggested the victim "needed to get her game plan together"; his cross-examination, where

he questioned the victim about her knowledge as a divorce attorney and the advice she would have given her clients; and the Defendant's own testimony, in which he wondered aloud whether the victim would "really go this far with the divorce." On that basis, the State renewed its request to use the letter. Although the trial court again excluded the document itself as substantive evidence, it permitted the State to ask the victim whether she had received such a communication.

In recalling the victim, the State asked whether the Defendant's divorce attorney had offered to secure a divorce if she helped dismiss the criminal charges. The victim confirmed that such a letter had been sent and testified that she rejected the proposal because the Defendant had raped her.

Finally, the State argued that a second letter showed similar efforts to link the divorce and criminal proceedings. This second letter suggested that issues regarding the grandparents' visitation rights might be resolved if the victim assisted in securing dismissal or resolution of the criminal charges. The trial court again excluded the letter itself but permitted limited testimony about its contents. The State questioned the Defendant about the letter on cross-examination, and the victim's mother testified about it during rebuttal.

### 2.      Tennessee Rules of Evidence 402 and 403

The Defendant first argues that the discussion of the letters from his divorce attorneys to the victim was inadmissible under Tennessee Rules of Evidence 402 and 403. Tennessee Rule of Evidence 402 requires that evidence be relevant before it is admissible. Further, Rule 403 excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The trial court's balancing under Rule 403 is a matter within its sound discretion. *See Vance*, 596 S.W.3d at 251.

However, "[e]ven if evidence is inadmissible, a party may 'open the door' to admission of that evidence. A party opens the door to evidence when that party introduces evidence or takes some action that makes admissible evidence that would have previously been inadmissible." *Vance*, 596 S.W.3d at 249 (quoting *State v. Gomez*, 367 S.W.3d 237, 246 (Tenn. 2012) but omitting internal quotation marks). Further, "[t]he most common manner by which a party opens the door to inadmissible evidence is by raising the subject of that evidence at trial. When a party raises a subject at trial, the party 'expand[s] the realm of relevance,' and the opposing party may be permitted to present evidence on that subject." *Id.*

Importantly, "opening the door is a doctrine intended to serve fairness and truth-seeking." *Vance*, 596 S.W.3d at 250. As such, the remedy sought after a party has opened the door should be "both relevant and proportional" and "limited to that necessary to correct a misleading advantage created by the evidence that opened the door." *Id.* at 251. The trial court then "must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence[.]" *Id.*

Here, the trial court consistently excluded the letters as inadmissible. But once the Defendant suggested that the victim fabricated her allegations to gain leverage in the divorce, he placed her motives squarely at issue. In fact, after assuring the court that he would not raise this argument, defense counsel nevertheless pursued it through opening statements, cross-examination, and the Defendant's testimony. That strategy created an arguably misleading impression—that the victim pursued the criminal case for advantage in the divorce—which the State was entitled to rebut. The testimony concerning the letters directly countered that claim by showing that the victim rejected the opportunity to trade dismissal of the charges for favorable terms in the divorce.

Moreover, the trial court's remedy was proportional to the misleading impression created by the Defendant's argument that the victim had an ulterior motive to fabricate the criminal charges. *See Vance*, 596 S.W.3d at 251. The court did not allow the State to introduce the actual contents of the letters but instead permitted only limited questioning of the witnesses. This approach corrected the misleading advantage without going further than necessary, thereby minimizing any risk of undue prejudice while remaining faithful to the governing standard.

Accordingly, we conclude that the trial court acted within its discretion in allowing the State to question the witnesses about the letters. The Defendant is not entitled to relief on this ground.

### 3. Tennessee Rule of Evidence 408

The Defendant alternatively argues that the letters from his divorce attorney were inadmissible under Tennessee Rule of Evidence 408. That rule prohibits, among other things, the use of evidence of attempts to compromise a claim to prove liability for or invalidity of a civil claim, or to establish or contest a criminal charge or its punishment. *See* Tenn. R. Evid. 408. It also excludes statements made during settlement negotiations when offered for those same purposes. *See id.*

However, Rule 408 does not operate as a blanket exclusion for all references to settlement discussions or communications. Evidence that falls within its literal terms may still be admissible when offered for another legitimate purpose. Examples recognized in Tennessee and elsewhere include showing bias or prejudice, rebutting a misleading claim made at trial, or proving an attempt to obstruct a criminal prosecution. *See* Tenn. R. Evid. 408; *Tennessee Law of Evidence* § 4.08[3][h] (noting that settlement evidence may be admissible to demonstrate bias or, in limited circumstances, to rebut testimony); *see also Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005) (noting courts have admitted settlement evidence for purposes other than establishing liability, including rebuttal).

Here, the testimony concerning the letters was not admitted to prove the Defendant's guilt of the charged offenses. Rather, the trial court allowed the testimony for a different purpose—specifically, to rebut the Defendant's repeated claim that the victim pursued the criminal prosecution as leverage in the divorce proceedings. By raising that assertion, the Defendant placed the victim's motives directly at issue. Limited testimony about the Defendant's own settlement offers—and the victim's rejection of those offers—was, therefore, relevant to correct the arguably misleading impression that the victim had initiated or maintained the criminal case for tactical advantage. That use falls within the recognized exceptions to Rule 408's bar.

The trial court also acted with caution in the manner of admission. It excluded the letters themselves to prevent jury confusion but permitted the State to ask the victim and her mother about their awareness of the offers conveyed through counsel. This narrow scope minimized the risk of undue prejudice or diversion from the central issues. Because the evidence was admitted for a permissible purpose outside Rule 408's exclusionary reach, and because the trial court carefully limited the scope of its use, we conclude that the court acted within its discretion. The Defendant is not entitled to relief on this ground.

### 4.     Tennessee Rules of Evidence 801 and 802

Finally, the Defendant argues that the evidence was inadmissible as hearsay under Tennessee Rule of Evidence 802. The State responds that the Defendant has waived this issue by failing to object on these grounds in the trial court. We agree with the State.

As we recognized above, before a party may raise an issue on appeal, the party must preserve that issue by raising it in the trial court. *See Gardner*, 716 S.W.3d at 416. Otherwise, "the party waives the issue on appeal and cannot seek plenary review." *Thompson*, 2023 WL 4552193 at *3 (citations omitted).

In this case, the Defendant did not object to the letters on the grounds of hearsay. Instead, the Defendant objected to their prejudicial effect, as we discussed above. Because he raised no contemporaneous objection to hearsay during the trial, we conclude that the Defendant has waived plenary review of this issue on appeal. *See Thompson*, 2023 WL 4552193, at *5. Moreover, because the Defendant does not request review of this issue for plain error, we respectfully decline to address the issue sua sponte. *See Ruiz*, 716 S.W.3d at 453. The Defendant is not entitled to relief.

## D.      FAILURE TO INSTRUCT ON MISTAKE OF FACT

The Defendant contends that the trial court erred by declining to instruct the jury on the general defense of mistake of fact. He asserts that the proof fairly raised the possibility that he mistakenly believed the victim consented and that, if accepted, such a mistake would have negated the mental state required for conviction. The State counters that the defense was not fairly raised because the Defendant's theory at trial was that the victim actually consented, not that he misperceived her lack of consent. After reviewing the record, we conclude that the trial court properly refused to give the instruction.

Tennessee law recognizes certain statutory defenses as "general defenses," including mistake of fact. *See* Tenn. Code Ann. § 39-11-203(b) (2018); *State v. Cole-Pugh*, 588 S.W.3d 254, 260 (Tenn. 2019). Once "fairly raised by the proof," a general defense must be charged to the jury, and the burden shifts to the State to prove beyond a reasonable doubt that the defense does not apply. Tenn. Code Ann. § 39-11-203(c)-(d).

The mistake of fact defense applies only when the defendant's ignorance or mistake negates the culpable mental state of the charged offense. Tenn. Code Ann. § 39-11-502(a). By its plain language, the statutory defense is unavailable where no such culpable mental state is required. As one example, this court has previously recognized that the mistake of fact defense has no application to strict liability offenses, precisely because those offenses have no culpable mental state. *See Ruiz*, 716 S.W.3d at 451 ("[W]here the essential elements of a crime do not include a culpable mental state, a mistake of fact defense simply has no application.").

The Defendant was convicted under Tennessee Code Annotated section 39-13-503(a)(2), which defines rape as the unlawful sexual penetration of a victim when "[t]he sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." *See also id.* § 39-13-503(a)(3) (addressing incapacity). The statute requires the State to prove *either* that the Defendant actually knew of the victim's lack of consent *or* that, under

the circumstances, he had "reason to know" of it.[3] The element of "knowledge" refers to awareness that the circumstances exist. *Id.* §§ 39-11-302(b), 39-11-106(a)(23). By contrast, "reason to know" introduces a constructive knowledge standard—whether a reasonable person in the Defendant's position would have perceived the victim's lack of consent.

Because the statute permits conviction based on a constructive knowledge standard, liability need not turn on the Defendant's subjective perception. Even if the Defendant sincerely but mistakenly believed that the victim consented, he could still be found guilty if a reasonable person in his position would have understood otherwise. In that circumstance, the defense of mistake of fact does not apply because it does not—indeed, cannot—negate the constructive knowledge element of "reason to know."

In short, the defense of mistake of fact was unavailable under the statutory elements of the charged offense. As such, we conclude that the trial court did not err in declining to instruct the jury on this general defense. The Defendant is not entitled to relief on this ground.

## E.    CUMULATIVE ERROR

To conclude his allegations of trial errors, the Defendant argues that the cumulative impact of the errors in this case prevented him from receiving a fair trial. We respectfully disagree.

The cumulative error doctrine applies when there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). More than one actual error must exist before the doctrine can apply. *Id.* at 77.

Because we have determined that the Defendant has failed to establish any error in the trial proceedings, there are no errors to aggregate. The cumulative error doctrine is therefore inapplicable, and the Defendant is not entitled to relief. *See State v. Paschel*, No.

---

[3]     The mens rea requiring proof that a defendant "know[] or have reason to know" of a circumstance surrounding the offense is also an element of the offenses of rape, aggravated rape, especially aggravated rape, especially aggravated rape of a child, sexual battery, aggravated sexual battery, and grave torture. *See* Tenn. Code Ann. §§ 39-13-503, -502, -534, -535, -505, -504, -117.

E2022-00900-CCA-R3-CD, 2023 WL 5975223, at *13 (Tenn. Crim. App. Sept. 14, 2023), *perm. app. denied* (Tenn. Mar. 7, 2024).

### F.     DENIAL OF MOTION FOR A NEW TRIAL

The Defendant contends that the trial court erred in denying his motion for a new trial based on what he characterizes as newly discovered evidence. After his conviction, the victim filed a motion in the divorce proceedings seeking full custody of their daughter and citing Tennessee Code Annotated section 36-6-406(c), which restrains parents convicted of certain sexual offenses from having contact with children. He argues that this filing contradicted her trial testimony that the criminal case would not affect the child custody determination. He also asserts that the filing supported his theory that the victim fabricated her allegations to gain an advantage in the divorce.

The State responds that the evidence was not newly discovered, could have been discovered with reasonable diligence, and would not have changed the outcome of the trial. We agree with the State.

#### 1.     Background

During the trial, the victim testified that she considered the criminal prosecution and the divorce proceeding to be separate matters and that she did not believe one would affect the other. When asked whether a conviction might impact the child custody determination, she acknowledged that incarceration would "obviously . . . impact visitation" because she would then have custody of the child "full time." The defense questioned the victim regarding the divorce proceedings, including matters relating to the distribution of the marital estate and custody of the parties' child.

Following the Defendant's conviction, the victim's lawyer filed a motion in the divorce proceeding requesting full custody of their daughter. In support of that request, the motion cited Tennessee Code Annotated section 36-6-406(c), which provides that a parent convicted of certain sexual offenses may be restrained from having contact with a child.

In his amended motion for a new trial, the Defendant argued that this post-trial filing constituted newly discovered evidence. In his view, the motion contradicted the victim's trial testimony and undermined her credibility by showing that she anticipated using the Defendant's conviction to her advantage in the custody dispute.

- 18 -

The trial court denied the Defendant's motion for a new trial on this ground. In its written order, the court concluded that the motion was not newly discovered evidence, but rather a legal filing based on a statute that has been in effect since 1997. The court further found that the statute was not material evidence but, at most, impeachment, and that the victim had already been questioned at trial about the potential consequences of the conviction on the divorce proceedings. The court ultimately concluded that the evidence was "not likely to change the result of the trial to one more favorable for the defendant."

### 2.      Newly Discovered Evidence

To prevail on a motion for a new trial based on newly discovered evidence, the Defendant must establish three elements: "(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence; and (3) that the evidence will likely change the result of the trial." *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994). In assessing the second and third prongs, the test is not what the jury *might* have done, but whether, with all evidence new and old before it, another jury *ought* to have returned a more favorable verdict. *See State v. Richards*, No. E2022-01468-CCA-R3-CD, 2024 WL 4142596, at *42 (Tenn. Crim. App. Sept. 11, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Apr. 17, 2025).

That said, newly discovered impeachment evidence will not generally constitute grounds for a new trial. *State v. Singleton*, 853 S.W.2d 490, 496 (Tenn. 1993). An exception exists only if the impeachment evidence is so crucial that its admission "will probably result in an acquittal." *Id.*; *see also State v. Perez*, No. E2021-00475-CCA-R3-CD, 2022 WL 2232264, at *11 (Tenn. Crim. App. June 21, 2022), *perm. app. denied* (Tenn. Nov. 17, 2022). "Whether the trial court grants or denies a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial judge." *State v. Caldwell*, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997); *State v. Biggs*, 218 S.W.3d 643, 663 (Tenn. Crim. App. 2006) (recognizing in this context that "our standard of review is abuse of discretion").

In this case, the trial court concluded that the victim's post-trial motion in the divorce proceedings was not newly discovered evidence and would not have changed the outcome of the trial had it been known earlier. We agree with that conclusion.

As a threshold matter, the Defendant cannot satisfy the first requirement— reasonable diligence. The alleged "evidence" is the victim's custody motion citing Tennessee Code Annotated section 36-6-406(c). But the significance of that filing lies not in the paper itself, but in the legal position it asserted. That position rested squarely on a

statutory provision that has been part of Tennessee law since 1997. *See* 1997 Tenn. Pub. Acts, ch. 557, § 1 (eff. July 1, 1997). Because section 36-6-406(c) is a matter of public law, and because the Defendant was aware of the ongoing divorce proceedings, minimal diligence would have revealed its consequences for custody.

Indeed, trial counsel asked the victim directly whether the criminal case would affect custody, and she acknowledged that incarceration would "obviously" give her full-time custody. Counsel did not follow up by inquiring about her knowledge of section 36-6-406(c) or her intent to rely on it. That she later invoked the statute in a custody filing does not transform her position into newly discovered evidence. At most, it confirmed the foreseeable legal effect of a conviction under long-existing law.

The Defendant also fails to meet the second requirement—materiality. The custody motion did not materially contradict the victim's trial testimony. She testified that incarceration would alter custody arrangements, and her later filing rested on that same premise. The filing was therefore consistent with, not contrary to, her sworn testimony. Its probative value was limited to impeachment, but even then, it added nothing new to what was already before the jury.

Finally, the Defendant cannot meet the third requirement—likelihood of changing the result. Even assuming the custody motion could be considered impeachment evidence, it does not approach the high bar required for a new trial. *See Singleton*, 853 S.W.2d at 496. The defense theory that the victim fabricated charges to gain an advantage in the divorce was already presented squarely to the jury. She was cross-examined on that point, and the jury rejected it. The later filing simply reflected a legal consequence that was foreseeable, consistent with her trial testimony, and immaterial to the ultimate verdict. It was not the sort of evidence that would likely have altered the outcome or resulted in an acquittal.

Accordingly, we conclude that the trial court acted within its discretion in denying the motion for a new trial. The Defendant is not entitled to relief on this issue.

## G. SENTENCING

Finally, the Defendant argues that the trial court erred in imposing a sentence of confinement and in denying his motion to reduce the sentence, asserting that he was a favorable candidate for probation. The State responds that the trial court acted within its discretion in determining that confinement was warranted. We agree with the State.

- 20 -

### 1.     Background

At the sentencing hearing, the State presented testimony from the victim's psychologist, a domestic violence advocate, and several community witnesses. Collectively, they described the victim's acute trauma, her continuing fear of the Defendant, and his history of volatility. The psychologist testified that the victim had not begun to heal because of the continuing legal process. The domestic violence advocate emphasized that divorce is a particularly dangerous period for victims, underscoring the risks the Defendant posed. Neighbors and a visitation monitor recounted repeated incidents in which the Defendant disregarded protective boundaries, became combative with supervisors, or sought to undermine the victim in front of their child.

The State also introduced evidence of the Defendant's 2010 conviction for driving under the influence. Lieutenant Stephen Hale testified that the victim reported an alleged violation of an ex parte order of protection, though the matter was later dismissed and expunged.

In mitigation, the Defendant called friends and family members who described his career, devotion to his children, and positive character. In his allocution, he maintained that the encounter with the victim had been consensual and suggested that she may have experienced an "Ambien blackout." He stated that he denied the allegations not because he lacked remorse, but because his "morals" would not have allowed him to commit such an offense. He expressed a desire to seek peace, rebuild his life, and reestablish the relationship with his children.

In its sentencing order, the trial court stated that it considered the evidence presented at trial and sentencing, the presentence report, the purposes and principles of sentencing, statutory enhancement and mitigating factors, and the Defendant's allocution. The court found enhancement factors based on the Defendant's prior DUI conviction, his volatile relationship history, and the particularly great injuries suffered by the victim. *See* Tenn. Code Ann. § 40-35-114(1), (6). It rejected proposed mitigating factors, finding instead that the offense was premeditated and purposeful and that the Defendant's allocution reflected a lack of remorse and poor rehabilitative potential. Finally, the court determined that consecutive sentencing was not appropriate.

Ultimately, the court concluded that confinement was necessary to avoid depreciating the seriousness of the offense. It also found that the Defendant was not amenable to rehabilitation due to his lack of remorse, his blaming of the victim, and his "vitriolic campaign" against the victim. After merging Counts 1 and 2 and Counts 3 and

4, the court imposed two concurrent ten-year sentences and ordered that the sentences be served in confinement.

## 2. Standard of Appellate Review

Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of appellate review also applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

Although the Defendant does not dispute the length of the sentence imposed, the sentence of ten years is within the applicable sentencing range. Moreover, the court expressly considered the purposes and principles of sentencing, possible enhancement and mitigating factors, and the common-law factors applicable to determinations of alternative sentencing. As such, we accord a presumption of reasonableness to the trial court's sentencing decisions and review those decisions for an abuse of discretion.

## 3. Manner of Service

The Defendant argues that the trial court erred in denying his request for an alternative sentence. "Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has observed that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison Cnty.*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and punishment must fit both the offender and the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Tennessee Code Annotated section 40-35-103(1) (2019) provides that a sentence involving confinement may be imposed if one or more of the following considerations apply:

(A)    confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct;

(B)    confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide effective deterrence to others likely to commit similar offenses; or

(C)    measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, the trial court must consider the defendant's potential for rehabilitation.  *See* Tenn. Code Ann. § 40-35-103(5).  Even when eligible for probation, the defendant bears the burden of establishing suitability, including a showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).  In evaluating whether to grant an alternative sentence, the trial court considers: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrent value of sentencing.  *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024), *no perm. app. filed*.

In this case, the trial court ordered that the Defendant's ten-year sentence be served in confinement.  In reaching that decision, the court stated that it considered the purposes and principles of sentencing, together with the factors set out in Tennessee Code Annotated section 40-35-210.  It weighed the nature and circumstances of the offenses, the Defendant's prior criminal history, his repeated violations of agreements, his treatment of the victim, his lack of remorse, and his limited potential for rehabilitation.  Based on those considerations, the court found that an alternative sentence would unduly depreciate the seriousness of the offenses and undermine the need for deterrence.  *See* Tenn. Code Ann. § 40-35-103(1)(B).

The Defendant challenges these findings.  He maintains that he is a strong candidate for rehabilitation and argues that a sentence of confinement is not the "least severe measure necessary to achieve the goals of sentencing."  He also contends that full confinement is unnecessary to avoid depreciating the seriousness of the offense.  In effect, the Defendant disputes the trial court's weighing of the relevant considerations in denying an alternative sentence.

As is typically the case with sentencing issues, the standard of appellate review is important to our analysis. When reviewing a trial court's decision for an abuse of discretion, we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). To that end, we may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [we] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). We also may not substitute our judgment for that of the trial court simply because a party believes that another choice would have been a better decision. *Cf. State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016).

Here, the trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the appropriate statutory and common-law factors and made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Given the Defendant's history of behavior, his consistent disregard of agreements, his lack of remorse, and poor rehabilitative prospects, the trial court's decision to impose incarceration was neither illogical nor unreasonable. As such, even if reasonable minds could disagree with the propriety of the decision—and we have no such disagreement—we conclude that the trial court acted within its discretion to deny an alternative sentence. *See Caudle*, 388 S.W.3d at 279. The Defendant is not entitled to relief on this ground.

### 4.      Modification of Sentence

In his last issue, the Defendant argues that the trial court abused its discretion by denying his motion to modify his sentence pursuant to Tennessee Rule of Criminal Procedure 35. The State responds that the trial court correctly determined the record did not justify altering the sentence in the interests of justice. We agree with the State.

### a.      Background

After sentencing, the Defendant filed a "Motion for Reduction of Sentence" pursuant to Rule 35, supported by two categories of new information. First, he offered proof that he had committed no disciplinary violations during his incarceration, contending that this record demonstrated his ability to comply with probationary conditions. Second, he submitted an excerpt from the deposition of the victim's romantic partner, who testified that the couple began having sexual encounters "not long" after their first date. The Defendant argued that this testimony contrasted with the victim's psychologist, who had stated that the victim struggled to establish a "functional sexual relationship" with another

partner.  Based on this additional information, the Defendant asked the court to reduce his sentence to eight years and to alter the manner of service to probation or split confinement.

### b.        Tennessee Rule of Criminal Procedure 35

Tennessee Rule of Criminal Procedure 35(a) provides that "the trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked."  The rule is designed to allow modification only "in circumstances where an alteration of the sentence may be proper in the interests of justice."  Tenn. R. Crim. P. 35, advisory comm'n cmts.  Rule 35 "does not vest the defendant with a remedy as of right.  Rather, this rule commits the granting of relief to the sound discretion of the trial court."  *State v. Edenfield*, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009); *State v. Patterson*, 564 S.W.3d 423, 429 (Tenn. 2018) ("The standard of review in an appeal from a trial court's decision on a Rule 35 motion is whether the trial court abused its discretion.").

Rule 35 permits a trial court to modify both the length of a sentence and the manner of its service, but the standard depends on how the judgment was entered.  When a defendant is convicted after trial without an agreement as to sentencing, the rule "does not require the defendant to make any particular showing in support of the motion and affords the trial court broad discretion to determine whether reduction of the initial sentence is appropriate in the interest of justice."  *Patterson*, 564 S.W.3d at 433-34.  In such cases, Rule 35 simply gives the trial court "an opportunity to again consider, after reflection or upon receipt of new probationary reports or other information, whether the initial sentence is too severe for any reason."  *Id.* at 434 (citation and internal quotation marks omitted).  Even then, the court may reduce a sentence only to one it could have originally imposed.  Tenn. R. Crim. P. 35(b).

In this case, the trial court denied the Defendant's Rule 35 motion, reasoning that the Defendant is "expected" to abide by the rules set by the Williamson County Jail.  Further, the court held that the deposition testimony from the victim's romantic partner was not a post-sentencing fact "because this testimony from the divorce trial was available at the time of the sentencing hearing in this matter so [the Defendant's] counsel had every opportunity to question [the victim's psychologist] on this issue but did not."  Ultimately, the trial court reaffirmed its original sentences and denied the Defendant's motion.

A trial court is not obliged to grant Rule 35 relief just because a defendant asks for it.  *See State v. Storey*, No. E2023-00431-CCA-R3-CD, 2024 WL 4212413, *8 (Tenn. Crim. App. Sept. 17, 2024), *no perm. app. filed*.  Instead, that relief may be granted only when the circumstances show that a modification is in the interests of justice.  *See* Tenn. R. Crim.

P. 35, advisory comm'n cmts. A trial court does not abuse its discretion by thoughtfully reexamining its original decision and declining to modify a sentence when the record does not support doing so in the interests of justice. *See Storey*, 2024 WL 4212413, at *8.

As with its original sentencing decision, the trial court identified the correct standards of law that applied to the Defendant's Rule 35 motion. It considered and weighed appropriate factors, and it made a reasoned choice between acceptable alternatives after considering the relevant facts contained in the record. As such, we conclude that the trial court acted within its discretion in denying the Defendant's motion to modify his sentence. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the trial court committed no reversible error. The court properly exercised its discretion in excluding testimony concerning the victim's relationship at the time of trial. It also acted within its discretion in admitting limited corroborative testimony from multiple witnesses and in permitting the State to question the victim about letters authored by the Defendant's divorce attorneys once the Defendant opened the door to that evidence. Likewise, the trial court correctly declined to instruct the jury on the defense of mistake of fact.

We further hold that the trial court acted within its discretion in denying the Defendant's motion for a new trial, as the asserted evidence was neither newly discovered nor material to the verdict. The court also imposed a lawful sentence of confinement and properly denied the Defendant's motion to reduce the sentence under Rule 35. Taken together, these determinations were consistent with the applicable statutory framework and within the trial court's discretion. Accordingly, we respectfully affirm the judgments of the trial court.

s/ **Tom Greenholtz**

TOM GREENHOLTZ, JUDGE